STATE v. GEORGIA SOUTHERN & FLORIDA RAILWAY CO.
190 So. 527

En Banc
Opinion Filed July 7, 1939
Rehearing Denied July 29, 1939

116

118

*Theo T. Turnbull* and *Wm. P. Simmons, Jr.,* for Appellant;

*Adair, Cooper, Osborne & Copp,* and *J. E. Hall,* for Appellee.

WHITFIELD, P. J.—Chapter 4108, Acts of 1891, conferred "upon the Georgia Southern & Florida Railroad Company, a corporation existing under the laws of the State of Georgia" "all the rights, privileges, powers and grants that are, by the general laws of the State of Florida and amendments thereto, conferred upon railroads incorporated thereunder," and also authorized and empowered the said Georgia Southern & Florida Railroad Company "To own, control and operate its line of railroad in the State of Florida extending from the line dividing the states of Georgia and Florida, through the counties of Hamilton, Columbia, Bradford, Clay and Putnam, to the city of Palatka in said County of Putnam, and to own and possess all such property real or personal, as may be necessary in the proper operation of its said railroad;" and further enacted "that nothing herein contained shall be so construed as to relieve the said railroad company from any of the duties or burdens placed upon it by the laws of this State and; Provided, That said railroad company shall at all times keep within the jurisdiction of the courts of this State some person or agent upon whom legal process may be served."

The preamble of the Act stated that "Said road was built in the State of Florida by virtue of a charter granted by

the State of Florida to the Macon & Florida Air Line Railroad Company, which company was by the act of the stockholders consolidated with the said The Georgia Southern & Florida Railroad Company, before the construction of its said railroad by the said The Georgia Southern & Florida Railroad Company." See charters and other Articles on file in office of Secretary of State at Tallahassee.

The Macon & Florida Air Line Railroad Company was incorporated August 3, 1886, under Chapter 1987, Laws of 1874; charter on file in the office of the Secretary of State.

There is also owned and operated by the present Georgia Southern & Florida Railway Company, as a part of its railroad system, a line of railroad extending from Valdosta, Georgia, to Jacksonville, Florida. This line, except as it is a part of the Company's entire system of railroads, is not in issue here. It was acquired and made a part of the system of roads of the Georgia Southern & Florida Railway Company after the line to Palatka, Florida, was constructed.

Chapter 6527, Acts of 1913, enacts that "Every railroad company shall operate over every part of its line not less than one passenger and one freight train each way daily except Sunday, unless the railroad commissioners shall determine that the public need does not require a greater service than one mixed train each way daily except Sunday, and if they shall so determine, such service will be deemed sufficient until the commissioners otherwise order." Sec. 6707 (4621) C. G. L.

In accepting and operating its line of railroad in this State under the provisions of Chapter 4108, Acts of 1891, the Georgia Southern &. Florida Railroad Company, as also its successors, the Georgia Southern & Florida Railway Company, obligated itself not to be relieved "from any of the duties or burdens placed upon it by the laws of this State." This is in its nature a contractual obligation and

extends to the statutory duty above quoted from the Acts of 1913 relative to train service that is .applicable to the line of the company's railroad extending from the Georgia line south to Palatka, Florida, which line of railroad is stated by counsel for the appellee company "to be a part of the original main line of the railroad."

.A common carrier railroad company owned by private parties must be by statute expressly authorized to operate as such carrier in the State; and, when so duly authorized, is given special privileges, including the right of eminent domain, in consideration of which the private property is dedicated to the authorized public use, subject to lawful regulation, for the primary purpose of rendering to the public the authorized service, in rendering which service it is protected by the laws of the State and allowed to receive for service rendered reasonable compensation to be determined by due course of law; but the State does not guarantee reasonable compensation for all services rendered, if the small volume of business or other controlling economic or legal conditions prevent the earning of reasonable compensation for all or any part of the public service duly undertaken and required to be rendered.

Under Section 30, Article XVI of the Florida Constitution of 1885, all services of a public nature performed under statutory authority by a common carrier and the rates charged therefor are subject to duly authorized and properly exercised governmental regulation, to correct abuses and to prevent unjust discrimination and excessive charges; and such governmental regulation may be as provided by statute, evidentiary burdens being placed upon the carriers, and all being subject to applicable limitations under the State and Federal Constitutions. See Munn v. People of Illinois, 94 U. S. 113, 24 L. Ed. 77; Chicago, B. & Q. R. R. Co. v. Cutts, 94 U. S. 155, 24 L. Ed. 94; McWhorter v.

Pensacola & A. R. Co., 24 Fla. 417, 5 So. 129; Pensacola & A. R. Co. v. State, 25 Fla. 310, 5 So. 835; State v. A. C. L. R. Co., 56 Fla. 617, 47 So. 969, 32 A. L. R. (N. S.) 639; State *ex rel.* R. Com'rs. v. A. C. L. R. Co., 60 Fla. 465, 54 So. 394; Louisville & N. R. Co. v. R. Com'rs., 63 Fla. 491, 58 So. 543, 44 L. R.· A. (N. S.) 189; State *ex rel.* R. Com'rs. v. F. E. C. R. Co., 69 Fla. 473, 68 So. 727; State *ex rel.* Triay v. Burr, 79 Fla. 290, 84 So. 61; State *ex rel.* R. R. Com'rs. v. S. A. L. Ry. Co., 89 Fla. 419, 104 So. 602; State *ex rel.* v. Jacksonville Terminal Co., 90 Fla. 721, 106 So. 576; State *ex rel.* v. S. A. L. R. R. Co., 92 Fla. 1139, 111 So. 282.

"Even though a particular duty of a railroad company if enforced would be in itself unremunerative and burdensome, such a result would be an incident to the service voluntarily undertaken, in consideration of the franchises permitted to be used for the public good, and the property rights of the carrier would not thereby be unlawfully invaded, if the particular service is reasonably necessary for the public convenience, and the burden to the carrier has some fair relation to the benefits accruing to the public, and the burden of the particular service, considered with reference to the entire business of the carrier, does not in reality amount to a denial to the carrier of a reasonable compensation for the service rendered by it as an entirely.

"Where it appears that a particular service is a duty vitally necessary to the public, and its performance is essential in adequately rendering a general public service as a common carrier, the fact that the performance of the particular duty will be unremunerative will not in view of the nature of the duty to the public excuse non-performance.

"If the performance of a particular useful, but nonessential duty will as a part of a general public service contribute to the public convenience, the fact that the par-

ticular service must be rendered at a loss, does not, in view of the nature of the duty required, excuse non-performance; but the loss occasioned by the performance of a particular duty may be considered in determining the reasonableness of the order requiring the particular service to be rendered." State ex rel. v. L. & N. and S. A. L. Ry. Co., 62 Fla. 315, 57 So. 175. See State ex rel. R. Com'rs. v. F. E. C. R. Co., 67 Fla. 83, 64 So. 443; State ex rel. R. Com'rs. v. F. E. C. R. Co., 69 Fla. 165, 67 So. 906.

It appears that for several years, by permission of the State Railroad Commissioners, the Georgia Southern & Florida Railway Company has been operating the minimum service prescribed by the statute, of one mixed passenger and freight train each way every day except Sunday, over the company's line from Valdosta, Georgia, to Palatka, Florida, a distance of about 133 miles. The Company presented a petition to the Railroad Commission to allow a lesser train service, "consisting of a southbound train on Mondays, Wednesdays and Fridays, and a northbound train on Tuesday, Thursdays and Saturdays, and proposed to institute that service upon a schedule set forth in the petition, averred that there were other railroads at many of the points on the line and that any seasonal shipments requiring extra service would receive such service, stated the exact volume of (local) business at each station on the line, averred that the mail service would be adequately handled by a Star Route service, averred the existence of bus and truck lines paralleling the railroad line and that they had substantially destroyed the traffic."

The request for such lesser train service is predicated upon allegations as to the financial net losses sustained in rendering the present particular service. The Railroad Commission denied the petition; and upon being notified that the service would on a stated day be reduced as pe-

titioned for, notwithstanding the order of the Commission, the Railroad Commission brought suit to enjoin the Company from discontinuing the present service of one mixed train each way every day except Sundays. The Railway Company defended on the ground that a continuance of the service as now being rendered would result in a monthly deficit in the operating expenses over receipts from the local service of more than $750.00 per month on the line of about 133 miles between Valdosta, Georgia, and Palatka, Florida. But such line apparently has unreported receipts from interstate traffic over the line in the operation of the two local trains here involved which connect with other through interstate lines, and also receipts from the operation of the "Sunbeam," a through interstate passenger train from points north over the line from Valdosta, Georgia, to Hampton, Florida, about 120 miles, thence to points south over the Seaboard Air Line Railway system. Such receipts should be considered in determining whether the primary duty to render the minimum statutory train service will be so burdensome, if continued, as to warrant the proposed reduction in such local service.

The National Transportation Act of 1920 contains the following: "Nothing in this Chapter shall impair or affect the right of a State in the exercise of its police power, to require just and reasonable freight and passenger service for intrastate business except insofar as such requirement is inconsistent with any lawful order of the Commission made under the provisions of this Chapter."

Chapter 6527, Acts of 1913, provides that: "Every railroad company shall operate over every part of its line not less than one passenger and one freight train each way daily except Sunday, unless the railroad commissioners shall determine that the public need does not require a greater service than one mixed train each way daily except Sun-

day, and if they shall so determine, such service will be deemed sufficient until the commissioners otherwise order." Sec. 6707 (4621) C. G. L.

The service of one mixed passenger and freight train each way every day except Sundays is a primary and imperative statutory duty which should be rendered in the interest of the public necessity for adequate local service even though the particular service is rendered at a relatively small financial loss; when it appears that the company's entire system has substantial net earnings over all operating expenses, and it is not clearly shown that the loss in rendering the particular local service is so out of proportion to the reasonable public necessity required to be met under the primary duties of the railroad company, as to operate as an unlawful deprivation of property rights of the appellee company.

The question presented here is whether an enforced *continuance* of the operation of one mixed passenger and freight train each way every day except Sundays on a line of the defendant's interstate railroad system from Valdosta, Georgia, to Palatka, Florida, will so reduce defendant's income, not from the particular line but from its entire system, as to result in a deprivation of property rights of the defendant railway company without due process of law or to amount to a taking of defendant's property for public purposes without just compensation, in violation of the State and Federal Constitutions. See A. C. L. Ry. Co. v. N. C. Corp. Com'n., 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933; 51 C. J. 696.

In making a judicial determination of the question stated, it is necessary to consider the nature of the service that defendant has been and is performing, which service is by administrative order required to be continued, and the financial burden of continuing the service, and its effect

upon the rights and reasonable needs of the public to be served as well as the operating features including earnings of the defendant railway company's entire system and its duty to render the commanded service. All revenue receipts of every nature and kind on or from the particular line and the entire system should be considered as well as the total proper expenses.

The Georgia Southern and Florida Railway Company operates a system of railway lines from Macon, Georgia, to Valdosta, Georgia, thence a line to Jacksonville, Florida, and another line to Palatka, Florida. The entire system operates about 397 miles of railroad. Of this total mileage the Jacksonville line is about 110 miles, and the Palatka line about 133 miles, the Florida part of the latter line covers about 115 miles. Train No. 13 runs south from Valdosta to Palatka, and train No. 14 runs north from Palatka to Valdosta, each daily except Sundays, and each being a mixed passenger and freight train. Said trains Nos. 13 and 14 serve the following towns in Florida, viz.: Jennings, Jasper, White Springs, Lake City, Lake Butler, Hampton and Palatka. There are also other shipping points on the said line in Florida, such as Florahome, Keystone Heights, and others.

A through interstate train called "Florida Sunbeam" from points in the northwest is operated during the winter months each way each day over the Georgia Southern & Florida Railway Company, from Macon, Georgia, through Valdosta, Georgia, to Hampton, Florida, a short distance from Palatka, Florida. From Hampton the train goes by the Seaboard Air Line Railway Company to points farther south in Florida. As such through interstate trains use the railroad track and other facilities of the line of the Georgia Southern & Florida Railway Company from Valdosta,

Georgia, to Hampton, Florida, approximately 100 miles in Florida, the trackage, service or other charges and receipts for the use of such railroad track and other facilities, or the proper receipts or charges for the service of the line to the through interstate train from Valdosta, Georgia, to Hampton, Florida, apparently should be credited to such line in determining the income of such line and its duty to furnish the minimum statutory local train service. Likewise the receipts from the interstate freight, passenger and other services upon the line should be considered in determining the financial burden in performing the primary and imperative duty to continue to furnish adequate train service on the branch line.

While the duty of railway common carriers to provide and maintain and to continue to render appropriate and adequate train service to meet the public needs over all lines of railroad devoted to the regular transportation of passengers and freight, might not in degree be as absolute and mandatory as the primary duty of such carriers to provide and maintain safe and sufficient road bed, track and rolling stock, and other facilities for the safe and expeditious transportation of passengers and freight, even though such service be an uncompensated financial burden to the carrier, yet such duty to provide and maintain appropriate train service *to meet the public needs,* must be performed even though its cost exceeds the receipts from rendering the particular service, when the burden of such latter service does not unduly impair the total revenue receipts of the carrier from all sources on its entire system, so as to amount to a deprivation of property without due process of law or a taking of property without just compensation, or so as to be a material undue burden on interstate commerce.

Where a line of a common carrier railroad company's

system renders interstate as well as intrastate passenger and freight service, and permission is sought to reduce the number of daily trains operated on the line because of the diminished revenue receipts earned by such line, the reasonable needs of the public are to be first considered, and all the revenue receipts, interstate and intrastate, as well as mail, express and all other sources of revenue duly accruing to the line, should be considered in determining, not whether the line is self-sustaining, but whether the financial burden of the line grossly exceeds the needs of the public to a continuance of the service, and so reduces the revenue receipts of the company's entire system as to be a deprivation or taking of property of the company without due process and without just compensation, or so as to unduly burden the interstate commerce transportation service of the company.

It is not necessary to determine whether the furnishing of particular adequate train service to meet the needs of the public receiving the service, is as much of a primary and absolute duty of a railroad common carrier as it is its duty to provide safe and suitable road bed, track, rolling stock, and other operating facilities for safely and efficiently rendering the public service that is authorized and undertaken, and should be furnished without controlling reference to the cost to the company. However, it is clear that the duty to furnish reasonably adequate train service to local communities served by such carrier, is essentially among the imperative duties that are by law imposed upon railroad common carriers in consideration of the privileges conferred upon them by the State for the benefit of the public. But the asserted requirements for adequate train service are subject to judicial determination, and must be reasonable for the public needs and not so unduly burdensome to the

carrier, as to operate as an unlawful deprivation of property without due process of law or as an unlawful taking of property for public purposes without just compensation. Each case should be determined by a fair consideration of all the pertinent facts affecting the rights of the public, the duty of the carrier with the burden to the carrier and the reasonable needs of the public. In particular cases the cost of the service may exceed the receipts therefrom, but this may not control if it does not unduly affect the receipts from the entire railroad system of the company, or impair organic rights or directly and unreasonably burden or impede interstate or foreign commerce. See Chesapeake & Ohio Ry. Co. v. Pub. Service Comm., 242 U. S. 603, 37 Sup Ct. 234, 61 L. Ed. 520; 51 C. J. 969-972; A. C. L. Ry. Co. v. N. C. Corp. Comm., 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933; Mo. Pac. R. Co. v. Kansas, 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472; State of Washington *ex rel.* Oregon R. & N. Co. v. Fairchild, 224 U. S. 510, 32 Sup Ct. 535, 56 L. Ed. 863; Chicago B. & Q. Ry. Co. v. Wis. R. R. Comm., 237 U. S. 220, 35 Sup. Ct. 560, 59 L. Ed. 926.

In C. & O. Ry. v. Pub. Service Comm., *supra,* the local train service was required even though there was no interstate business on the local line.

*In re Moseley's Estate* (State v. Nagle, Nagle v. State), Florida to the appellee company as stated above were in consideration of the construction, maintenance and operation, as required by the laws of the State of Florida, on the line of railroad from the Georgia State line southeast to Palatka in the State of Florida, for the benefit primarily of the communities through which the line of railroad extends; and the minimum train service on such line required by the laws of Florida should not be further reduced in violation of the duly promulgated orders of the Florida Railroad

Commission, at least unless it be clearly shown by a complete exposition of all the revenue receipts from such line and of the proper expenditures in operating· such line and the effect thereof on the revenues of the entire system of the company's lines, that an enforced continuance of the present minimum statutory train operations on such line will inevitably and unlawfully deny organic property rights of the railroad company. The present record does not make a sufficient showing to justify nullifying the orders of the Railroad Commission.

Reversed for further appropriate proceedings.

TERRELL, C. J., and BROWN, BUFORD, CHAPMAN and THOMAS, J. J., concur.

### ON PETITION FOR REHEARING

PER CURIAM.—It is ordered that the judgment of this Court of July 7, 1939, be without prejudice to the appellee making an application to the Railroad· Commission for relief under Chapter 19177, Acts of 1939.

Petition for rehearing denied.