**RAILROAD COMMISSION OF TEXAS et al. v. TEXAS & N. O. R. CO.**

**No. 9603.**

Court of Civil Appeals of Texas. Austin.

Oct. 23, 1946.

Rehearing Denied Nov. 13, 1946.

---

* Mileage not noted for this car due to the speedometer being taken off for repairs.

178

Grover Sellers, Atty. Gen., and James D. Smullen, Asst. Atty. Gen., for appellants.

Baker, Botts, Andrews & Walne, and Cyril J. Smith, all of Houston, John J. McKay and Charles N. Avery, Jr., both of Austin, for appellee.

BAUGH, Justice.

This appeal is from a judgment setting aside an order of the Railroad Commission of Texas denying the Railroad Company's application for authority to abandon passenger train service on its branch line between Wharton and Palacios; and enjoining the Commission from interfering with such abandonment. The facts leading up to this controversy were substantially as follows:

The railroad was built about 1904 and both freight and passenger train service between said points then inaugurated. Due to the fact that the passenger train service was operated at a loss, the Commission, under Art. 6479, R.C.S., as amended in 1933, see Vernon's Ann.Civ.St. Art. 6479, granted said Railroad Company permission in 1936 to abandon passenger train service over said line between Palacios and Bay City; and for the same reason in 1938 granted said Railroad Company permission to abandon such passenger train service between Bay City and Wharton. Between March, 1938, and September, 1940, no passenger train service over said branch line was rendered. In September, 1940, because of the national emergency and the military installation at Palacios, said Railroad Company voluntarily resumed daily passenger train service between Wharton and Palacios, notifying the Commission at the time that same was intended to be temporary to meet military necessity only, and when such necessity should cease to exist, the Railroad Company would apply to the Commission for authority to discontinue such temporary service.

In September, 1942, the Railroad Company applied to the Commission for authority to discontinue such service on the ground that it was no longer needed and was being operated at a loss. Hearing was had thereon and the application denied, because of gas and tire rationing, "without prejudice to further consideration after a test period, ending March 1, 1943." Another application, based upon the same grounds, was made in 1945 and refused on December 21, 1945, on the recited grounds of "public convenience and necessity." A third application, setting up the same grounds, was heard by the examiner for the Commission on May 2, 1946, and denied by order of the Commission dated May 21, 1946, without stating the grounds for denial thereof. This latter order is one herein appealed from.

Extensive original evidence was presented upon the trial hereof, and the records of the three hearings before the examiner for the Commission were also offered. The trial court set aside the order appealed from and authorized the abandonment of such passenger train service upon a finding that such service is not a public necessity; and does not and will not pay its cost, plus a reasonable return on the property employed in rendering it.

The first point presented by the Commission involves a construction of Art. 6479, R.C.S. as amended. The contention being that said statute, in providing that the Commission "shall relax such requirement" (that is, for passenger train service) under the conditions stated in said statute, is neither authorized nor compelled to permit complete "abandonment" of such service.

A review of former statutes and the decisions based thereon is essential to a proper determination of this contention.

■ Under Arts. 6349, 6357, 6358, and 6479, R.C.S.1925, and the prior decisions relating to abandonment of railroad once in operation, it appears now settled law that a railroad company had no such right of abandonment regardless of loss in operation, without specific legislative authority to do so. Such are the holdings in State v. Sugarland R. Co., Tex.Civ.App., 163 S.W. 1047; Jeff Bland Lumber & Bldg. Co. v.

Railroad Commission, Tex.Civ.App., 203 S.W. 402, both decided by this court; and State v. Enid, O. & W. Ry. Co., 108 Tex. 239, 191 S.W. 560. In all of these cases complete abandonment of the railroad and removal of the tracks were involved. The decisions in the two cases first above cited were grounded on lack of legislative authority to permit such abandonment; and the decision of the Supreme Court in case last above cited was grounded upon contract to maintain and continue such railroad. In 1927 the Legislature amended Art. 6479, R.C.S.1925, which then required daily service, except Sunday, of all railroads and branches thereof carrying passengers, so as to provide that "the Commission may, in its discretion, relax such requirement as to any railroad in this State less than fifty miles in length and the gross annual passenger revenues of which are less than $3,600.00; * * *." Acts 40 Leg., 1927, Ch. 198, p. 283. Again in 1933, Acts 1933, 43rd Leg., Ch. 111, p. 281, the Legislature further amended Art. 6479 so as to read in so·far as pertinent here, as follows: "It shall be the duty of the Commission to see that upon each railroad in this State carrying passengers for hire there shall be run at least one train each day, Sundays excepted, upon which passengers shall be hauled; provided, however, the Commission may, in its discretion, upon application filed and after notice and hearing, relax such requirement as to any railroad, or part, portion or branch thereof, *when, in its opinion, public convenience permits of such relaxation,* and shall relax such requirement when it appears upon such hearing that the running of one train each day, Sundays excepted, *is not necessary in the rendition of adequate service to the public, or that on any railroad, or part, or portion or branch thereof,* passenger service as frequent as one train each day, Sundays excepted, *with the passenger traffic offered and reasonably to be expected, does not and will not pay the cost of such service plus a reasonable return* upon the property employed in the rendition of such service; * * *." (Emphasis added.)

We think it may be clearly inferred that such amendments were enacted because of the rigid requirements of such statutes as construed in the decisions above cited, and to relieve the onerous burdens imposed by law on short line railroads or branches operating at a loss. But the issue here presented is whether the Legislature intended, in the use of the word "relax" to authorize complete *abandonment* of such service. There was evidence that the Commission had in past authorizations permitted the abandonment of passenger services where operated at a loss; and had, in 1936 and 1938, authorized appellee to do so over the same route here involved. Such actions by the Commission may be deemed a departmental construction of said Act, which, if the law be ambiguous and the construction reasonable, the courts will ordinarily follow. 39 Tex.Jur. § 126, p. 235. But where exceptions or provisos to a general law are involved, they will, as a rule, be strictly construed, and such provisos not extended beyond their plain terms. 39 Tex.Jur., § 148, p. 277. It is also a cardinal rule of statutory construction, that words in common use, when used in a statute, will be given their natural, ordinary, and popular meaning. Art. 10, R.C.S.; 39 Tex.Jur., § 105, p. 197. Both "relax" and "abandon" are words of common use, and of commonly understood meaning. They are by no means synonymous. The ordinary meaning of the term relax is to lessen, loosen, reduce, mitigate, make less rigid or severe, etc. While abandon means to give up completely and absolutely; to relinquish or surrender utterly, with intent not to resume, etc. Webster's New International Dictionary. If the Legislature had intended to authorize complete abandonment of such passenger service, it could easily have so expressly provided. The language of the emergency clause of said 1933 amendment would appear to indicate a contrary intent. That clause, stating the reason for the legislation, provided: "Sec. 2. The fact that numerous applications have been made by Texas railroads to the Interstate Commerce Commission for authority to abandon lines of railroad in this State because the earnings of same are materially less than their expenses, some of which applications have been granted and others of which are still pending before said Com-

mission, and that unless the expenses of other lines of railroad are reduced to amounts not in excess of their earnings, applications for authority to abandon same will probably be made to said Interstate Commerce Commission and granted, whereby numerous communities in this State will be deprived in some cases of all railroad service and in others of competitive railroad service, creates an emergency, etc. * * *."

From this it would appear that the legislative purpose was to obviate and prevent such abandonment by curtailment of required services and reductions of expenses of such lines to a point where the I.C.C. would not grant such authority; that the term "relax" the former rigid requirements of daily passenger train service, was designedly used to enable such railroads to reduce their expenses, but not to eliminate entirely a service needed by the public.

The language of the statute encompasses "any railroad, or part, or portion or branch thereof." It is not confined to branch lines only. If appellee's interpretation of the statute be correct—that is, that it is mandatory—the Commission must, when operations at a loss are shown, authorize abandonment of such passenger train service; then even the major railroads could, when the stated conditions obtain, abandon such passenger train service over their main lines. Obviously, the Legislature never intended to authorize any such dire consequences to the public.

■ Abandonment of such service in toto, not a reduction of the expenses by curtailment thereof, was what was sought before the Commission. Since the Commission, under the above interpretation of the statute, did not have the authority to authorize complete abandonment thereof, it properly denied appellee's application. Nor was it the duty of the Commission to determine what lesser service, change of schedules, alterations of equipment, etc., would reduce or remove the losses being sustained. That was a problem for railroad management. And, as above stated, appellee made no showing in this regard; but sought only to abandon such service.

■ Appellants' next contention is that appellee did not show any right of abandonment by showing losses in passenger service alone; but that losses, vel non, are referable to, and to be determined by, receipts and revenues from all services rendered, both freight and passenger. Reliance, in particular, to sustain this contention is had on State v. Georgia Southern & F. R. Co., 139 Fla. 115, 190 So. 527, 123 A.L.R. 914, and annotations thereunder; and on Fort Smith Light & Transit Co. v. Bourland, 267 U.S. 330, 45 S.Ct. 249, 69 L.Ed. 631. We deem it unnecessary to discuss and distinguish these cases. It may be conceded that, absent statutory provisions otherwise, the general rule is that the total revenues from such railway system may be looked to in determining the issue of loss in operation of a portion thereof. However, in the instant case, the relief sought by appellee was predicated expressly upon the provisions of the Texas statute; and the statute itself prescribes the standard whereby the question of such losses is to be determined. It is, by the language of the statute, limited to passenger service only, the income therefrom, and the use of the "property employed in the rendition of such service." Having thus provided the standard for determining such loss, which did not include freight revenues, the railway company met its burden before the Commission when it complied with that statute.

■ Appellants' third point is that the trial court erred in finding, inferentially at least, that the service in question "is not necessary in the rendition of adequate service to the public." That was a question for determination by the Commission, and the general rule which now appears to have been adopted by the Supreme Court of Texas, that if there be substantial evidence before the Commission to sustain its findings thereon, would appear to be applicable. However, the Commission did not state in its order refusing the appellee permission to discontinue said service its grounds for such refusal. It seems to be the contention of the Commission that the "reasonable needs of the public are to be first considered" (State v. Georgia

Southern & F. Ry. Co., supra [139 Fla. 115, 190 So. 532],); and that if there be a public need for such service, then that losses in operation do not control and may be disregarded. We do not so construe said statute. That statute sets out three conditions under which the service involved may be relaxed. 1. When, in the opinion of the Commission, public convenience permits; and 2. When "not necessary in the rendition of adequate service to the public." When these facts are proven, relaxation of such service is authorized whether same is being operated at a loss, merely paying its way, or earning a profit. The third condition defined is the one on which the appellee primarily relies—that is, that such service does not pay, and cannot be made to pay, the expenses thereof. Said statute does not require that all three conditions exist before relief can be granted. The third condition is not merely an addition to the other two, nor is it dependent upon them. The disjunctive "or" is used, indicating a separate and distinct ground for such relaxation thereof. Obviously the Legislature concluded that inconvenience to the public from the relaxation of such service was not commensurate with the burden imposed upon the carrier by compelling it to continue operation at a loss. Indeed the two questions are inseparably related. If the patronage of the public be insufficient to pay the costs of the service, then it would appear, prima facie at least, that the public generally would not be greatly inconvenienced by its relaxation. In any event, it is clear we think that, under said statute, the third condition (loss in operation) under which said statute authorizes relief is not subordinate to nor dependent upon public convenience and necessity; but constitutes an independent ground for such relief.

The last contention made by appellant is that appellee did not meet the burden of proof of operational losses, within the meaning of the statute. We do not sustain this contention. The books of appellee, kept in accordance with I.C.C. accounting regulations, showed an out of pocket loss on said line between May 17, 1941, and June 30, 1946, of $88,200, of which $8,828 occurred during the first six months of 1946. The train involved consisted of a gasoline propelled car with trailer attached. Its schedule called to leave Wharton at 9:10 a. m., arrive at Palacios at 11:20 a. m.; and on the return trip, to leave Palacios at 11:30 a. m. (10 minutes after arrival) and reach Wharton at 2 p. m. This schedule was arranged so as to make close connections with through trains on the main line at Wharton. Some witnesses testified that if Palacios, instead of Wharton, were used as a starting point, and said train left Palacios in the early morning and returned to Palacios in the afternoon, it would be more convenient for the people of Palacios, and probably more of them would use such service. However this would disregard main line connections at Wharton, and in the opinion of appellee's witnesses would not increase the patronage. It would unduly prolong this opinion to no useful purpose to set out or summarize the evidence here; but we think it is clear that if all the changes and improvements in the service proposed or suggested by appellants' witnesses were made, and all revenue from mail and express between Wharton and Palacios credited to said line, it would at most only reduce the losses from such operation, even if it did that, and would not eliminate such losses. Clearly railroad management, with knowledge of all factors involved, is in a better position to "regulate the time and manner in which passengers and property shall be transported * * *" so as to avoid losses, than are the citizens of a particular locality on its line, prompted merely by their own interests and convenience. The statute itself recognizes that fact. Art. 6341, § 4, R.C.S. Consequently the testimony of the citizens of Palacios, admittedly predicated on their own convenience, did not, we think, have any probative value that if railroad management would change division points for its crew, rearrange its schedule, etc., it would earn more money on the service in question. We think the evidence clearly shows the appellee fully met the burden of showing that such service did not, and could not reasonably be made to, pay its way within the meaning of the statute.

However, as above stated, that statute does not authorize a complete abandonment or discontinuance entirely of all passenger service. Hence the trial court erred in so authorizing such abandonment.

The judgment of the trial court is therefore reversed, the injunction granted is dissolved, and judgment here rendered for appellant; but without prejudice to the rights of appellee to apply for and receive from the Commission appropriate relief by relaxation of existing requirements of daily train service, Sundays excepted, as authorized by said law.

Reversed and rendered without prejudice.