**TEXAS & NEW ORLEANS R. CO. v. RAILROAD COMMISSION OF TEXAS**
**et al.**

**No. 9788.**

Court of Civil Appeals of Texas. Austin.

April 13, 1949.

Rehearing Denied May 4, 1949.

274

McKay & Avery and John J. McKay, all of Austin and Baker, Botts, Andrews & Parish and Tom Davis, all of Houston, for appellant.

Price Daniel, Atty. Gen., of Texas, and Chas. E. Crenshaw, Asst. Atty. Gen. for Railroad Commission of Texas.

Alfred M. Scott, of Austin, of counsel for appellees.

HUGHES, Justice.

Appellant, Texas and New Orleans Railroad Company, a common carrier by rail, applied to the Texas Railroad Commission on June 9, 1947, for authority to discontinue its passenger train service between Waco and Yoakum, a distance of 171 miles. This service consisted of one train each way daily between the two towns, the trains being Nos. 51 and 52.

This application was brought under Art. 6479, Vernon's Ann.Civ.St., and appellant bases its right of discontinuance solely upon the fact that its passenger trains between Waco and Yoakum had for several years operated at a loss and that the passenger traffic offered and reasonably expected to be offered to these trains would not pay the cost of operation and a reasonable return upon property employed in the rendition of such service.

The Commission denied this application; appeal was taken to the court below and upon a non-jury trial the order of the Commission was sustained.

That portion of Art. 6479, supra, here involved reads:

"It shall be the duty of the Commission to see that upon each railroad in this State carrying passengers for hire there shall be run at least one train each day, Sundays excepted, upon which passengers shall be hauled; provided, however, the Commission may, in its discretion, upon application filed and after notice and hearing, relax such requirement as to any railroad, or part, portion or branch thereof, when, in its opinion, public convenience permits of such relaxation, and shall relax such requirement when it appears upon such hearing that the running of one train each day, Sundays excepted, is not necessary in the rendition of adequate service to the public, or that on any railroad, or part, or portion or branch thereof, passenger service as frequent as one train each day, Sundays excepted, with the passenger traffic offered and reasonably to be expected, does not and will not pay the cost of such service plus a reasonable return upon the property employed in the rendition of such service; * * *."

The trial court found and the Commission does not deny that according to appellant's books, which are accurately kept in accordance with Interstate Commerce Commission accounting regulations, the passenger service in question has, beginning with 1945, been operated at a loss. These losses are:

"1945 ...................... $12,524.59
"1946 ...................... 13,447.40
"1947 ...................... 25,426.31
"First 8 months of 1948....... 20,079.50"

It is conceded, then, that " * * * the passenger traffic offered * * * will not pay the cost of such service * * *."

It remains only to be determined whether the passenger traffic offered together with the passenger traffic "reasonably to be expected" will pay the cost of such service plus a reasonable return upon the property employed in the rendition of such service.

On this issue the trial court found that:

"The passenger traffic offered, and that reasonably to be expected, and the revenues therefrom, under the present status of operation, using the present equipment, will not pay the cost of operating the passenger service of trains 51 and 52."

As to the equipment the court found that the motor car in use was of average type for this kind of service but that the passenger coach in use was of the oldest type operated in Texas, and that while appellant has maintained its equipment it has made no effort to improve the equipment in the last ten years.

Other findings of the trial court are: increased rates have been granted appellant since 1945 on passenger, express and mail service; wages and other operating expenses have increased during such period and on October 16, 1948, a wage increase will become effective; that common carrier motor carrier buses compete with appellant's trains; and, that in the cities and towns served by appellant's trains, business, industry and population have increased since 1940, and will "reasonably continue to increase."

The conclusion of the trial court was:

" * * * In view of the undisputed evidence that generally in the cities and towns in the territory served by trains 51 and 52 the business, industry and population have increased and developed substantially from 1940 through 1948, both inclusive, and because, except for the changes in schedule found above, plaintiff has not changed the type of train service offered by trains 51 and 52 in the last ten years in an effort to attract additional passenger train business. I find that plaintiff has failed to sustain its burden of showing that the train service could not reasonably be made to pay in the future."

Asserting this conclusion to be correct and that the order of the Commission is based upon substantial evidence, appellees maintain the judgment should be affirmed.

The principal witness who testified that in his opinion a change in equipment would result in increased passenger traffic was Mr. Don Teas, Secretary-Manager of the Yoakum Chamber of Commerce, his language being:

" * * * if you would put in a coach there with properly upholstered seats, clean, air conditioned, advertise it to the public that you have something to offer them, I think your business would increase, but—it would more than triple."

This opinion was based on the fact that Mr. Teas, himself, would occasionally ride the train. The last time Mr. Teas rode one of these trains was twelve years ago. He is not a railroad man and has had no railroad experience.

Mr. T. H. Meeks, assistant to appellant's general manager, and who had been employed by it for thirty-six years, testified at great length and in much detail as to the issues before the court and explained why these branch line passenger trains and other comparable branch line trains were showing operating losses, the reason being that they were unable to compete with buses and private conveyances, and he gave as his opinion that there was no reasonable prospect that the trains in question could be made to earn their operating expenses within the forseeable future.

This opinion was based upon these facts: Roads and highways are constantly being improved; bus service is being extended; since the war there is no shortage or rationing of tires and gasoline; bus schedules are more frequent and convenient; private cars travel in all directions and most people who make short trips travel by private car.

Mr. Meeks testified that interurban rail service between Waco and Dallas, Houston and Galveston, and between Beaumont and Port Arthur had been abandoned because of inability to compete with buses

and private cars and that train travel for short-haul passengers is "outmoded." That this is progressively becoming more evident, at least in so far as trains 51 and 52 are concerned, is shown by the fact that revenue passengers on these trains have declined as follows: From 43,561 in 1945 to 25,995 in 1947, and to 13,621 for the first eight months of 1948.

Most of the facts upon which Mr. Meeks based his opinion are facts known by everyone as a matter of common knowledge. On short trips, say up to 200 miles, a very small per cent of those who travel use the train. The primary reason for this is good roads, good cars and a schedule of one's own making. Few of those who so travel know or care if the train operates over the route they intend going; they neither know nor care whether the train coach is modern or not; they are not interested in when the train leaves or when it returns. Most people never even inquire as to such matters. They use their own cars. Of those who travel by public conveyance, the bus is a very strong competitor because of better schedules and service to more points.

The remedy for the ills which beset the short-haul passenger rail lines as gleaned from some evidence and considerable argument, in the case before us, consists of innumerable suggestions, such as advertising, magazine and confection stands, air conditioned cars, and, of course, better equipment in general.

Railroad management has a duty to its stock and bondholders as well as a duty to the public and, in our opinion, it would be a reckless disregard of these duties for such management to spend large sums of money in proving something which it already knew—that short-haul passenger rail traffic between Waco and Yoakum does not and cannot be made to pay.

In our opinion the trial court erroneously concluded that the order of the Commission was reasonably supported by substantial evidence and likewise erred in holding that appellant did not discharge the burden of proving that with the passenger traffic offered and reasonably to be expected the trains in question would not pay.

In reaching these conclusions we have wholly disregarded all evidence showing a public convenience and necessity requiring a continuation of the service sought to be abandoned. We do so upon the authority of Art. 6479, supra, and the opinion of this court in Railroad Commission of Texas v. Texas & N. O. R. Co., Tex.Civ.App., 197 S.W.2d 176, and the opinion of the Supreme Court in the same case, reported in 145 Tex. 541, 200 S.W.2d 626.

Appellees contend that this treatment of the case will render Art. 6479, supra, invalid, under Sec. 2, Art. X of the Texas Constitution, Vernon's Ann.St., which provides:

"Railroads heretofore constructed or which may hereafter be constructed in this state are hereby declared public highways, and railroad companies, common carriers. The Legislature shall pass laws to regulate railroad, freight and passenger tariffs, to correct abuses and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state, and enforce the same by adequate penalties; and to the further accomplishment of these objects and purposes, may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable."

For the substance of appellee's argument we quote from its brief:

"At the time of the adoption of Article X, Section 2, in 1890, the common law, as it then existed, declared that railroads were common carriers with the duty of furnishing adequate service, both freight and passenger, to the public. See Elliott on Railroads (Third Edition), Volume 4, Sections 2079, 2201 et seq., and cases cited. That being the common law with reference to railroads prior to 1890, it is obvious that the people of Texas, when they adopted Article X, Section 2, of our Constitution in 1890, did so with due regard to the then existing common law. Therefore, the Legislature does not have power to change the

meaning which was definitely prescribed in our Constitution. And any attempt by the Legislature to empower the Railroad Commission to grant relief such as T. & N. O. seeks here upon conditions and circumstances which do not consider the public need for the railroad service, would be contrary to the spirit and meaning of Article X, Section 2, of our Constitution."

In speaking of the above constitutional provision the court in Railroad Commission of Texas v. Houston & T. C. R. Co. 90 Tex. 340, 38 S.W. 750, 753, said:

"The amendment to the constitution from which we have quoted, deals with the general subject of railroads and railroad companies, and the first sentence declares a most important principle,—that railroads are public highways and railroad companies, carriers. This declaration of the fundamental doctrine upon which the succeeding provisions rest was made as a basis for the laws which the legislature was commanded to enact. The provisions which direct the legislature to enact laws by which control over the public highways and common carriers may be exercised to the fullest extent are in harmony with the subject-matter of the amendment and the policy of the state as declared therein."

■ We also quote from Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778:

"A statute must be held valid, unless its enactment was expressly or by necessary implication prohibited by the Constitution. * * *

"The Constitution is not to be given a technical construction, but must be construed in an equitable manner, so as to carry out the great principles of the government. * * *

"State Constitutions are construed in the light of the common law, since the common law is generally in force in the United States. * * *

"The common law, as declared by the courts of the several states, is the rule of decision in [this State], and has been so since January 20, 1840. * * *

"Where the Constitution is merely declaratory of common-law principles, and does not define rights and remedies, the common law, so far as not inconsistent with the Acts of the Legislature or the Constitution, is to be applied."

■ In the light of the principles of these decisions it is clear that the Constitution in declaring railroads public highways and railroad companies common carriers, made a declaration of public policy and of an important public principle which would be administered and applied under the rules of the common law only insofar as the Constitution and Legislature did not otherwise provide.

The Constitution does not expressly prohibit the enactment by the Legislature of a statute such as Art. 6479, supra, and we find nothing in the Constitution which evidences any intent on the part of the people of Texas to shackle themselves to the tenets of the common law in dealing with modern and complex problems incident to the regulations of railroad companies as common carriers and we do not agree that such Article is unconstitutional.

In our opinion the judgment of the trial court should be reversed and judgment here rendered vacating the order of the Commission denying appellant permission to discontinue passenger rail service on its lines between Waco and Yoakum, Texas, and enjoining the Railroad Commission of Texas and its members from interfering with the discontinuance of such service.

It is so ordered.

Reversed and rendered.