ATLANTIC COAST LINE R. CO. v. FLORIDA R. R. & PUBLIC UTILITIES COMMISSION et al.

Civ. No. 302.

United States District Court
N. D. Florida, Tallahassee Division.
March 19, 1951.

584

G. L. Reeves, Tampa, Fla., for plaintiff.

Lewis Petteway, Tallahassee, Fla., for Fla. R. R. & Public Utilities Com.

Before RUSSELL, Circuit Judge, and BARKER and DE VANE, District Judges.

BARKER, District Judge.

This is an action brought by the Atlantic Coast Line Railroad Company, a Virginia corporation, against the Florida Railroad & Public Utilities Commission, and the members thereof, to enjoin the enforcement of an order of the Commission entered October 19, 1950, requiring the continued operation of daily passenger train service between Lakeland and Clewiston, Florida. A Three-Judge Court was convened under authority of Title 28, U.S.C.A. § 2281, and when the matter came on for hearing before the court on Plaintiff's application for an Interlocutory injunction, the matter, by stipulation of the parties, was submitted to the Court on final hearing for permanent injunction.

The purpose of the action is to overturn the order of the Florida Railroad & Public Utilities Commission, which denied Plaintiff's application for authority to reduce to tri-weekly the daily operation of two passenger trains between Lakeland and Clewiston, Florida. The basis of the action is that the Commission's order is so arbitrary and unreasonable and so completely unsupported by the evidence that: (1) the order results in the confiscation of Plaintiff's property and, therefore, is in violation of the due process clause of the Fourteenth Amendment to the Constitution of the United States; (2) that it places a burden on Interstate Commerce not permitted by the Commerce Clause of the Constitution, Art. 1, Sec. 8, Clause 3; and, (3) that it violates the National Transportation Policy prescribed by Congress, as set forth in Transportation Act of 1940, 54 Stat. 899, 49 U.S.C.A. § 1 et seq.

Defendants filed an answer to the complaint and at the same time filed a motion to dismiss the complaint. The Court will first consider and dispose of the motion to dismiss. The grounds for the motion are:

1. It affirmatively appears from the allegations of the complaint that this court is without jurisdiction to entertain this cause and grant relief sought by plaintiff.

2. It affirmatively appears from the allegations of the complaint that the administrative remedies and processes afforded by the laws of the State of Florida have not been exhausted and as a result thereof this Court has not and cannot acquire jurisdiction of the subject matter of this cause until said administrative remedies have been exhausted, and,

3. It affirmatively appears from the allegations of the complaint that adequate remedies at law are available to Plaintiff and that it is not entitled to injunctive relief until said remedies have been pursued and exhausted.

The gravamen of this motion is that Plaintiff should have defied the order and forced the Commission to proceed in some form against it, or taken this case into the State Court, instead of the Federal Court, for relief. There is no doubt as to the complaint raising Federal questions, that the amount in controversy is in excess of $3,000 and that there is diversity of citizenship between the parties. There is also no question that the administrative remedies afforded Plaintiff by Florida law have been exhausted and the case has reached the judicial stage.

Since the decision of the Supreme Court of the United States, in Smyth v. Ames, 169 U.S. 466, 18 S.Ct. 418, 42 L.Ed. 819, there has existed no doubt as to the right of an aggrieved party, entitled to sue, to invoke the jurisdiction and powers of a Federal Court, whenever the established principles and rules permit such a suit in that Court, and a party cannot be deprived of that right by reason of the existence of the right to sue, or be sued, in a State Court on the same cause of action.

Bacon v. Rutland Railroad Co., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538; Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659; and, Pacific Telephone & Telegraph Co. v. Kuykendall, 265 U.S. 196, 44 S.Ct. 553, 68 L.Ed. 975.

The motion to dismiss will be denied.

The complaint alleges that on April 29, 1949, Plaintiff filed an application with the Florida Railroad & Public Utilities Commission requesting authority to discontinue daily operation of Plaintiff's passenger trains Nos. 102–175 and 176–101, between Lakeland and Clewiston, Florida, and the substitution, in lieu thereof, tri-weekly service in opposite directions on alternate dates with no service in either direction on Sunday.

Plaintiff alleges that the application was made and filed for the reason that such large losses were being continuously sustained in the daily operation of said trains, due to the lack of public patronage, that their continued daily operation was no longer reasonably necessary for the service to the public, and that the proposed tri-weekly service would then have met, and now would meet, any reasonable transportation needs of the public.

The complaint further alleges that the evidence before the Commission disclosed, for the twelve-months' period, from May 1, 1948 through April 30, 1949, Plaintiff sustained passenger service losses of $213,-594.69 and that for the following fourteen-months' period, from May 1, 1949 through June 30, 1950, Plaintiff sustained further losses of $217,019.67.

In support of its allegation that the lack of public patronage made continued daily operation no longer reasonably necessary for the service of the public, Plaintiff set out in the complaint much of the evidence introduced before the Commission, bearing upon the extent of the use of its passenger trains by the general public, which shows that few persons used the service and that the revenue derived therefrom does not even compensate for the wages paid the crews operating the passenger trains.

The answer filed by Defendants, in general, admits the averments of the complaint as to the losses sustained by Plaintiff from the operation of the passenger train service in question, but denies there exists no public need for the service. In addition, the answer sets up certain legal defenses which, if valid defenses, will defeat Plaintiff's right to the relief prayed.

Plaintiff submitted evidence in support of each and every allegation of the complaint, with reference to the monetary losses sustained and in support of its allegation that there was no public need for the service now rendered by it. The evidence submitted amply supports each allegation of the complaint as to the losses sustained and as to the existence of no urgent public need for the questioned service now being rendered by Plaintiff.

Defendants offered no testimony, but stood on their legal defenses to the complaint. Defendants rely first upon Florida Statutes, 1941, Sec. 350.16, F.S.A., which, in such part as is pertinent here, is as follows: " * * * Every railroad company shall operate over every part of its line not less than one passenger and one freight train each way daily except Sunday; provided if after hearing and investigation the railroad commissioners shall determine that the public need does not require such daily service they shall prescribe such service as in their opinion the public need does require and such service will be deemed sufficient until the commissioners shall otherwise order. However, nothing herein contained shall be held as limiting the right of the railroad commissioners to require of all railroads and common carriers such greater service as they shall deem to be to the best interest of the public."

The contention is that this Statute places on Plaintiff the obligation to operate over every part of its line not less than one passenger train each way daily, except Sunday, unless the Commission, after a hearing and investigation, shall determine that the public need does not require such daily service, and that since this Statute was in effect when this branch line of railroad was put into operation, that Plaintiff can-

not now complain that the order of the Commission is confiscatory of property or otherwise in violation of the Constitution of the United States or the Transportation Act of 1940.

The second legal defense, which is, in fact, only complementary to the first, is that the complaint, on its face, shows that Plaintiff operates its passenger service over its entire system at a heavy loss and that freight rates have been increased by the Interstate Commerce Commission and many State Commissions, including the Florida Commission, to cover the deficit from system passenger operations. Defendants, therefore, contend it is incumbent on Plaintiff to prove that its entire operations, both passenger and freight, *on this branch* line, result in confiscation of the property of the branch line to entitle it to the relief sought in this Court.

The complaint alleges and the evidence introduced by Plaintiff shows that Plaintiff lost more than $921,000 on its system passenger business in 1946; more than $8,600,000 in 1947; more than $9,600,000 in 1948 and more than $8,700,000 in 1949. The evidence also shows that in 1949, after meeting the deficit of $8,700,000 in passenger system losses, Plaintiff had a net railway operating income of $6,753,898.91. All this shows the extent to which freight rates have been increased to take care of passenger operating losses.

Defendants rely upon State v. Georgia Southern and Florida Railway Company, 139 Fla. 115, 190 So. 527, 530, 123 A.L.R. 914 to sustain the validity of these defenses. That case was, in all respects, similar to this case, except as to the losses being sustained from the operation of the passenger service. In this case the losses are substantially greater than they were in that case.

The Supreme Court of Florida, in reviewing the validity of the order of the Florida Commission, refusing to grant the request of the Railroad Company to reduce the passenger service on one of its lines below the minimum service prescribed by the Statute, held: "The service of one mixed passenger and freight train each way every day except Sundays is a primary and imperative statutory duty which should be rendered in the interest of the public necessity for adequate local service even though the particular service is rendered at a relatively small financial loss, when it appears that the Company's entire system has substantial net earnings overall operating expenses, and it is not clearly shown that the loss in rendering the particular local service is so out of proportion to the reasonable public necessity required to be met under the primary duties of the railroad company, as to operate as an unlawful deprivation of property rights of the appellee company."

The Court further held in that case that: "The asserted requirements for adequate train service are subject to judicial determination, and must be reasonable for public needs and not so unduly burdensome to the carrier, as to operate as an unlawful deprivation of property without due process of law or as an unlawful taking of property for public purposes without just compensation. Each case should be determined by a fair consideration of all the pertinent facts affecting the rights of the public, the duty of the carrier with the burden to the carrier and the reasonable needs of the public. In particular cases the cost of the service may exceed the receipts therefrom, but this may not control if it does not unduly affect the receipts from the entire railroad system of the company, or impair organic rights or directly and unreasonably burden or impede interstate or foreign commerce."

Plaintiff made no showing as to the gross and net revenue derived from its operation of the branch line involved in this suit, extending from Haines City to Clewiston, Florida, and offered testimony to the effect that under the system of accounts, prescribed by the Interstate Commerce Commission and maintained by Plaintiff, it was, as an accounting matter, impossible to furnish this information. Plaintiff did show, however, and it is not controverted on the record, the investment of Plaintiff, in Railroad property used in its transportation service, the net Railway operating income and the rate of return on property investment for the years 1946, 1947 and 1948.

This evidence shows that the net Railway operating income produced a rate of return on the total investment in the property of less than 1% for the years of 1946 and 1947 and less than 2% for the year 1948. The evidence also shows that the rate of return for 1949 was little, if any, better than for 1948.

■ The law is well settled that a common carrier is protected by the Constitution of the United States against confiscation and the police powers of the State are subject to the limitation that the property of a common carrier cannot be taken without just compensation or without due process of law. Northern Pacific Railroad Co. v. North Dakota, 236 U.S. 585, 35 S.Ct. 429, 59 L.Ed. 735; Mississippi Railroad Commission v. Mobile & Ohio Railroad Co., 244 U.S. 388, 37 S.Ct. 602, 61 L.Ed. 1216; Atchison, Topeka & Sante Fe Railroad Co. v. Railroad Commission of California, 283 U.S. 380, 51 S.Ct. 553, 75 L.Ed. 1128; Lynchburg Traffic Bureau v. Commonwealth, 189 Va. 612, 54 S.E.2d 66; Delaware L. & W. R. Co. v. Van Santvoord, D.C., 232 F. 978; Atlantic Coast Line R. Co. v. Public Service Commission of South Carolina, D.C., 77 F.Supp. 675; Ann Arbor R. Co. v. Michigan Public Service Commission, D.C., 91 F.Supp. 668; Southern Railway Co. v. Alabama Public Service Commission, D.C., 91 F.Supp. 980.

■ It is obvious to everyone that a rate of return of less than 2% is not a fair return on property devoted to public services. It is, therefore, clearly established in this case that Plaintiff is entitled to the relief sought, unless Defendants' contention that it is incumbent on Plaintiff to prove that its entire operations, both passenger and freight, on the *branch line* of plaintiff here involved, results in the confiscation of the property of the branch line. The answer to this contention of Defendants is found in the decision of the Supreme Court of Florida in State v. Georgia Southern & Florida Railroad Co., supra., where the Court said the statutory requirements must be met by every Railroad company "when it appears that the Company's *entire system* has substantial net earnings over all operating expenses * * *".

Moreover, to hold that Plaintiff is restricted by law to a showing of net earnings on its branch line only would run counter to the Transportation Act of 1940, to the policy adopted and followed by the Interstate Commerce Commission and by the Defendants in carrying out the provisions of said Act.

The evidence in this case clearly shows that if Plaintiff is to continue in the passenger business at all it must, of necessity, restrict passenger operations to those most essential in the public interest and limit its operations where no real public necessity exists for such daily operations as the Defendants' order requires in this case.

The Court finds and holds that Plaintiff sustains a substantial net loss in the operation of the daily passenger service over the branch line in question; that the continuation of the daily service prescribed by the order of the Florida Railroad & Public Utilities Commission, dated October 19, 1950, is not necessary to meet the public interests and is confiscatory of Plaintiff's property. The enforcement of said order and the imposition of penalties for its violation will be enjoined.

DE VANE, District Judge, concurs.

RUSSELL, Circuit Judge (specially concurring).

I enter this special concurrence to make clear that in my view of the case there is no basis for any intimation or ruling at the present time other than that the plaintiff upon the showing made is entitled to an injunction prohibiting the Florida Railroad and Public Utilities Commission and its members from proceeding to enforce any penalties provided by Florida law because of any violation by the plaintiff *of an order of such Commission.*

The complaint originally named the Governor and the Attorney General of Florida as parties to the suit. However, upon the hearing the plaintiff moved the dismissal of these two officers. Thus the proceeding remained only as against the Railroad and Public Utilities Commission and the members thereof. There was no prayer for any declaratory adjudication. Injunction, tem-

porary and permanent, only was sought, and this for the reason that the plaintiff could not disregard the order of the Commission without becoming subject to a possible penalty of $5,000.00 for each violation of the Commission's order as provided by Florida statutes of 1941, section 350.28, F.S.A., by proceedings instituted under Florida statutes of 1941, section 350.36, F.S.A. In other words, the plaintiff submitted its case to the Court upon the showing that there was no public need for the passenger service, that the Commission should have permitted a reduction of such service, and that it was entitled upon the showing made to an injunction to restrain any attempt to enforce the penalties referred to. No other prospective or contingent liability was asserted or relied upon, and our opinion and any injunction issued should be clearly restricted to the precise question at issue. In view of the undisputed showing of no actual need for the passenger service provided by the trains in question, and the very substantial loss incurred in their operation, there is no doubt that upon applicable legal principles referred to by the majority, the *order of the Florida Railroad and Public Utilities Commission* denying the plaintiff's application and finding "that daily service is necessary to meet the public need," because of the opinion that the plaintiff "failed to sustain the burden of showing that daily service is not necessary along the route of its trains," is unreasonable and unsupported by any evidence before us. We must, therefore, hold the order ineffective, so that any proceeding to recover the penalties provided by the statute for violation of the order would result in subjecting the plaintiff unlawfully to such penalties because predicated upon a finding which in legal effect constitutes an unconstitutional requirement. Under the record here it is clear that as concerns the Commission's order requiring daily service the plaintiff should not be subjected to proceedings for its violation, and that any such proceeding should be enjoined.

On the other hand, other questions lurk in the proper construction and application of the statute of Florida referred to in the opinion requiring daily passenger service.

This statute is referred to in the complaint and it is argued here that if it be applied so as to authorize the order complained of, it would be likewise unconstitutional. Since, as I view the matter, in the posture of the present litigation, we do not reach the question of the full effect of the statute, we have no occasion to consider its applicability other than as to the extent involved in the precise point of the present case, that it does not authorize the issuance of an order by the Commission which is unconstitutional in its requirements. It is not clear how the determination of the Commission affects the statute. Sufficient it is that the Commission did not rely upon the statute and placed its action squarely upon what it determined to be required by the public need along the branch line in question. It is not necessary to even attempt to consider the effect of the *statute* upon the plaintiff's proposed plan of reduced service, nor upon issues which might be hereafter presented to this or another Court based upon other and different proceedings and facts presented in support thereof. However, since I am in no doubt as to the invalidity of the order of the Commission here under attack, I join in that portion of the opinion and in the injunction directed to issue restraining the enforcement of the order and any imposition of penalties for its violation.