THORNAL, Justice.
By petition for a writ of certiorari we are requested to review an order of the Florida Railroad and Public Utilities Commission, which prescribed a uniform statewide rate for multiple shipments of crushed stone in lots of ten or more cars.
We must determine whether the record before the Commission supports the order under review.
The intervening respondents here, Florida Crushed Stone Co., Florida Limerock Institute and Shands and Baker Inc., were complainants before the Commission. The complainants were engaged in the production and distribution of limerock, limestone and other road building aggregates which move by rail common carrier in carloads throughout Florida. The complainants are producers of these commodities in the so-called Ocala Limerock formation area. Their production points are located generally in north and south central Florida. These points are served primarily by the Atlantic Coast Line and Seaboard Air Line Railroad companies. These railroads will be referred to as A.C.L. and S.A.L. There are other producers of the same or similar commodities located in the Miami area on the lower east coast of Florida. These producers are served by the Florida East Coast Railway, referred to hereafter as F.E.C. The line of this railroad runs generally along the east coast from Miami north mf Jacksonville. The lower east coast producers near Miami are also served by the S.A.L. from point of production to West Palm Beach and then, if desired, over the line of the S.A.L. through central Florida and north to Jacksonville. In April 1960, the F.E.C. voluntarily published a rate differential for shipments of crushed stone in lots of ten cars or more from one point of origin to a single destination under one bill of lading to various points along the F.E.C. route. These discounts were allowed for a single line haul. They provided a differential of 15?S below the basic scale rate from Miami to West Palm Beach. Beyond the latter point, the discount differential was graduated for various blocked-out areas along the F.E.C. until it reached a maximum of 34?! per ton on a haul from Miami to Jacksonville. Subsequently, the A.C.L. and S.A.L. placed into effect a fixed rate differential for multiple car shipments between certain production points on their lines and Jacksonville. There was no graduated differential for intervening points. All of these various differentials were for single line haul.
By the complaint filed with the Commission the complainants asserted that the graduated differential allowed by F.E.C. to lower east coast producers created a discrimination in their favor when serving various points on the middle east coast along the line of the F.E.C. The point made was that in the absence of a differential allowable on a joint line haul between A.C.L. and S.A.L. and points on the F.E.C., the complainant shippers were placed at a competitive disadvantage with the producers on the lower east coast who had the benefit of the F.E.C. differential to points along the east coast served only by the F. E.C. The respondent granted the relief sought. By its order No. 3296, it required all of the Florida railroads to add to their “sand, gravel, and crushed stone tariff,” a provision as follows:
“Multiple-car shipments: When shipments are made in lots of ten or more cars offered at one time from one consignor at one point of origin, billed to *525 one consignee at one destination on one bill of lading, rates shall be IS cents per ton less than those applicable in this tariff for single-car shipments.”
By its order the Commission found that the costs of transporting multiple car shipments are less than single car shipments of like commodities; that the difference in costs is due mainly to the necessity for fewer shifting operations at origin and destination terminals; that the differential between multiple car rates and single car rates should be a uniform amount in cents per ton and not graduated according to mileage blocks; that the graduated multiple car rates from points along the lower east coast to other points along the F.E.C. and the multiple car rates from a few producing points on the A.C.L. and S.A.L. to Jacksonville without comparable rates from other producing points to all other destinations in the state, result in unjust discrim-inations in favor of certain producers, producing points and destinations.
It is this order which the F.E.C. now submits for review. The petitioner contends primarily that the subject order was entered without supporting evidence, and that in directing a freight rate differential on joint line operations the order is confiscatory.
Common carriers are subject to properly exercised governmental regulation to correct abuses and to prevent unjust discrimination. Article XVI, Section 30, Florida Constitution, F.S.A. The respondent Commission is the state agency designated to exercise the applicable governmental authority. State v. Georgia Southern and F. Ry., 139 Fla. 115, 190 So. 527, 123 A.L.R. 914; Section 323.07 and Section 350.12, Florida Statutes, F.S.A. In the performance of this function the orders ■of the respondent Commission are accorded a presumption of correctness. The burden of upsetting them rests upon the party who makes the assault. Nevertheless, this Court is clothed with the power to review such orders. Article V, Section 4, Florida Constitution; Section 350.641, Florida Statutes, F.S.A. If upon review it is apparent that an order of the Commission is not supported by competent substantial evidence, or for any reason is at variance with the essential requirements of law, the order will not be permitted to stand. Florida Rate Conference v. Florida Railroad & Public Utilities Commission, Fla., 108 So. 2d 601.
To the extent that the instant order prescribed a 15^ per ton differential for multiple car single line transportation, we find adequate evidentiary support. Although the complainants themselves submitted little direct evidence on the subject, the record reveals that the railroads of their own volition had established the reasonableness of such a differential for single line haul. This is particularly true of the petitioner F.E.C. Actually, the F.E.C. had initiated the multiple car differential allowance. By its graduated scale it voluntarily published a differential up to 34^ per ton on the haul from Miami to Jacksonville. In lesser degree the A.C.L. and S.A.L. had similarly recognized the reasonableness of the 15‡ per ton differential for single line haul prescribed by the Commission’s order.
However, on the aspect of the order which prescribed a flat 15^ per ton differential for joint line haul we are compelled to find the record totally devoid of evidentiary support. In fact, the principal witness for the complainant shippers, readily admitted that they could produce no cost studies whatever to support the requested differential. The complainants did place in the record a letter addressed by A.C.L. and S.A.L. to F.E.C. suggesting a 15^ per ton multiple car joint haul differential for traffic terminating on the F.E.C. system. The letter was specifically conditioned upon acceptance by F.E.C. This approval was never forthcoming. Moreover, the record unequivocally reveals that the offer evidenced by the subject letter had been effectively withdrawn due to the fact that the letter itself had been rather impetuously *526 written without supporting cost studies. Witnesses for the railroads which initiated the letter testified that subsequent cost' studies had indicated that they would lose money on joint haul traffic if compelled to publish a 15$ per ton joint haul differential. So far as the joint haul is concerned, the respondent Commission had no evidence to support the prescribed 15$ per ton differential. There was one exhibit which indicated that multiple car shipments could be handled for substantially less than single car shipments on both joint and single line haul. However, when existing basic scale rates were applied to the expense of both the joint and single line operations, this exhibit indicated that even under present tariffs the cost of furnishing this transportation exceeded the rate allowed. This exhibit offered no support for the order under review.
In addition to other factors, the record reveals that on joint line operations the F.E.C. is required to pay to the other railroads, a per diem detention charge of $2.88 per car for each day that the cars of the connecting carriers are detained on F.E.C. tracks for the discharge of crushed stone. It was further revealed that a joint line haul obviously involves the expense of shifting from one line to the other. This expense is not involved in a single line operation.
None of the railroads, either here or before the respondent Commission, questions the basic validity of a multiple car rate differential. For many years the Interstate Commerce Commission refused to sanction multiple car rate differentials although it did permit a differential for a single carload, as distinguished from a partial carload. The early decisions denying approval to multiple car rates were based upon the view that such an allowance would discriminate in favor of a shipper who could produce a commodity in multiple carloads as distinguished from one who could not. Although we have not been referred to any decision specifically upholding a multiple car rate differential, it now appears to be accepted that differences in quantities shipped as a single shipment may support differences in transportation rates. We, therefore, hold that a multiple car shipment, as described in the instant order, will justify a rate differential when otherwise sustained by the evidence. Molasses from New Orleans, Louisiana to Peoria and Pekin, Ill., 235 I.C.C. 485. In numerous instances the Interstate Commerce Commission has heard requests for multiple car rates. It has accepted the applications on their merits instead of denying them because of any claimed discrimination inherent in this type of rate. In all instances brought to our attention, however, the Commission has always required evidence of cost studies before arriving at a conclusion. Pig Lead from Brownsville, Tex., to Chicago and St. Louis, 280 I.C.C. 585. In the instant case, as we have emphasized, there is a total lack of cost data evidence to support the respondent Commission in prescribing the joint line rate differential.
For the reasons we have announced the subject order is quashed to the extent that it prescribes a joint haul rate differential and the cause is remanded to the respondent Commission for further proceedings consistent herewith.
It is so ordered.
DREW, C. J., and THOMAS, ROBERTS and HOBSON (Ret.), JJ., concur.