Stanley **BLUMENTHAL** et al.,
Petitioners,

v.

**FEDERAL COMMUNICATIONS COMMISSION** and United States of America, Respondents.

No. 17208.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 4, 1963.

Decided March 28, 1963.

Mr. Victor Rabinowitz, New York City, of the bar of the Court of Appeals of New York, pro hac vice, by special leave of court, with whom Mr. Joseph Forer, Washington, D. C., was on the brief, for petitioners.

Mrs. Ruth V. Reel, Counsel, Federal Communications Commission, with whom Messrs. Max D. Paglin, Gen. Counsel, Daniel R. Ohlbaum, Assoc. Gen. Counsel, Federal Communications Commission, and Lionel Kestenbaum, Atty., Dept. of Justice, were on the brief, for respondents.

Before BAZELON, Chief Judge, and FAHY and WRIGHT, Circuit Judges.

FAHY, Circuit Judge.

Petitioners Blumenthal, Jones and Paschal each applied to the Federal Communications Commission for a radio operator's license. Their applications were dismissed. They petition this court to review the orders of the Commission dismissing the applications. Our jurisdiction is rested upon § 402(a) of the Communications Act, 47 U.S.C. § 402(a).

The dismissals were made on the ground that each applicant had failed to respond adequately to relevant questions, answers to which under oath had been requested by the Commission. The questions were as follows:

"1. Are you now or have you ever been a member of the Communist Party? If the answer is yes, give dates of membership;

"2. Are you now or have you ever been a member of any organization or group which advocates or teaches the overthrow of the Government of the United States, or of any political subdivision thereof, by force or violence? If the answer is yes, list the organizations or groups and give dates of membership."

Blumenthal answered question No. 1 as follows:

"I am not a member of the Communist Party and was not at the time I applied for renewal of my second-class radiotelegraph operator's license in 1958. As to the period prior to that date, I decline to answer in accordance with the privileges granted to me under the Fifth Amendment to the Constitution of the United States."

He answered question No. 2, "No."

Jones answered question No. 1 as follows:

"I am not a member of the Communist Party and was not at the time I was first requested to execute a questionnaire by the Commission."

He also answered "No" to question No. 2.

Paschal, who applied for renewal of his amateur operator's and station licenses, in answer to question No. 1 replied:

"I am not a member of the Communist Party. In view of the manner in which existing legislation has been utilized and the attitude of various governmental agencies in prosecuting and persecuting by de facto fiat, I must utilize my right under the Fifth Amendment of the Constitution to refuse to give comfort or aid to any inquisitorial activity regarding any past or present political activity."

He gave the same answer to question No. 2.

The Commission advised the applicants that it was unable to act upon their applications until complete answers were given. The Commission advised also that any answers given would be considered in light of all the facts and circumstances, and that the applicants might submit with the answers any information which would help the Commission in finally disposing of the applications. Blumenthal and Jones requested hearings as to the sufficiency of the applications. The requests were denied because each applicant had been afforded such a hearing in connection with his earlier application, which had been abandoned, and also because the Commission relied on the intervening decision of this court in Borrow v. Federal Communications Comm'n, 109 U.S.App. D.C. 224, 285 F.2d 666, cert. denied, 364 U.S. 892, 81 S.Ct. 223, 5 L.Ed.2d 188 (1960), as establishing the Commission's authority to require complete answers to the questions. Blumenthal and Jones failed to avail themselves of further time allowed to complete their answers, whereupon the Commission dismissed their applications, citing Section

303(*l*)[1] of the Act and Section 1.71(d) of its Rules.[2]

Paschal's application was also dismissed, on the ground that he too had not satisfactorily completed the questionnaire, the Commission citing in his case Section 1.506(b) of its Rules[3] in addition to Section 303(*l*) of the Act.

█ Since Jones did not invoke the Fifth Amendment his case is governed by our decision in Borrow, from which it follows that the order of the Commission dismissing his application will be affirmed on the authority of that case. And see Cronan v. Federal Communications Comm'n, 109 U.S.App.D.C. 208, 285 F.2d 288, cert. denied, 366 U.S. 904, 81 S.Ct. 1046, 6 L.Ed.2d 203 (1960).

As to Blumenthal and Paschal the contention is that since they invoked the Fifth Amendment their cases are distinguishable from Borrow and reversal is required.

This court in Borrow, followed in Cronan, decided that the questions were pertinent and relevant and that the Commission had authority to insist upon the information. Those cases further hold that First Amendment rights are not infringed by requiring answers to the questions. In Borrow we held that the applicant's failure to answer authorized the Commission to dismiss the application, not because the failure to answer considered alone was a reason for disqualification but because it withheld information the Commission was entitled to request and to receive; in other words, the application was not completed in important respects.

█ In contending that the exercise by Blumenthal and Paschal of their Fifth Amendment privilege not to answer fully, removes their cases from the controlling effect of Borrow and Cronan, appellants rely on Konigsberg v. State Bar of California, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957). There an applicant for admission to the state bar had refused to answer certain questions, and the Court held that no adverse inference as to character and loyalty could be based on such refusal. And the appellants contend that the decision in the second Konigsberg case, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961), does not affect them adversely. In this regard they rely on the following statement from the majority opinion in that case: "We think it clear that the Fourteenth Amendment's protection against arbitrary state action does not forbid a State from denying admission to a bar applicant so long as he refuses to provide unprivileged answers to questions having a substantial relevance to his qualifications." 366 U.S. at 44, 81 S.Ct. at 1003. It is urged that the Court's reference to "unprivileged answers" indicates that were the answers privileged, as here, failure to answer would not lead to denial of the application as unduly incomplete. We do not feel warranted in so interpreting this statement of the Supreme Court. In second Konigsberg the Fifth Amendment privilege was not interposed, so we cannot say the question of a "privileged answer" was actually decided. Considering that the Fourteenth Amendment imposes upon state action the same limitations the First Amendment imposes upon federal action, the Court held in second Konigsberg that the questions asked did not impinge upon rights of free speech and association protected by the

---

**1.** In pertinent part this statute reads as follows:

"Except as otherwise provided in this chapter, the Commission from time to time, as public convenience, interest, or necessity requires, shall * * *

"(*l*) Have authority to prescribe the qualifications of station operators, to classify them according to the duties to be performed, to fix the forms of such licenses, and to issue them to such citizens or nationals of the United States as the Commission finds qualified * * *. 47 U.S.C. § 303.

**2.** Failure to prosecute an application, or failure to respond to official correspondence or request for additional information, will be cause for dismissal. * * *. 47 C.F.R. § 1.71(d).

**3.** The wording of this rule, 47 C.F.R. § 1.506(b), is the same as that of 1.71(d) set out in note 2, *supra*.

Fourteenth Amendment.[4] In our case, however, there is the explicit Fifth Amendment privilege to refuse to answer. Petitioners accordingly had a constitutional right not to answer, whereas Konigsberg did not have the constitutional right which he asserted. The question remaining then is whether this requires a different result in our case, notwithstanding the refusal to answer has the same effect as it had in Konigsberg, and in Borrow and Cronan. It withholds from the Commission the aid and cooperation of the applicant in supplying information substantially relevant to his qualifications for the license. The Commission acts under the statutory standard of public interest in granting or denying an application, and Borrow holds that the information sought is relevant to a decision under that standard. We think withholding the information has no less effect when withheld under the Fifth Amendment privilege than when withheld as in Konigsberg.

■■ The Fifth Amendment privilege protects a person who invokes it from self-accusation; but when he seeks a license at the hands of an agency acting under the standard of the public interest, and information substantially relevant to that standard is withheld under the privilege, as may be done, the need for the information and the cooperation of the applicant with respect to it remains. The agency cannot be required to act without the information.[5] To hold otherwise would carry the privilege beyond its purpose. While its invocation may not be considered ground for disqualification, for the privilege is available to the innocent as well as to the non-

innocent, the lack of relevant information which follows in the wake of its assertion leaves a gap in data which the applicant can supply. The effect is the same whether the refusal to supply it is based on the Fifth Amendment or on an unfounded claim under the Fourteenth Amendment.

Dismissal of an application for refusal of the applicant to fill the informational gap leads to an unhappy result. For it attaches significance to exercise of the privilege, and exerts pressure upon the applicant to waive it. Yet, on the other hand, there remains the inability of the Commission to obtain his help in supplying relevant information available to him. He applies for the license. The Commission cannot be required to act on his application without the relevant light he can supply and which the Commission is authorized to seek. It seems to us, therefore, that the failure to supply that light, though by resort to the privilege, is cause for dismissal of the application as incomplete in significant respects. This is not an entirely satisfactory solution of the problem. For the application is lost when resort is had to the privilege. The application is sacrificed though the privilege is preserved. To save both seems impossible. The choice is that of the applicant. Although no implication of guilt attaches to use of the privilege, other and indirect consequences are not altogether avoided. We are constrained to hold that this is the result we must accept, assuming the correctness of our Borrow decision that the questions were authorized and relevant. See Kimm v. Rosenberg, 363 U.S. 405, 80 S.Ct. 1139, 4 L.Ed.2d 1299 (1960); Orloff v. Willoughby, 345 U.S.

4. Appellants also argue in respect to Konigsberg that the license there involved was one to practice law for which good character has traditionally been regarded as pertinent. This argument goes to matters we have said were decided in Borrow, supra, and which we do not reconsider.

5. Nor can the Commission, it seems to us, be required to come forward with evidence

against the applicants before a license may be withheld, as has been suggested in argument. Such a contention implies that the licensing procedure is in actuality a proceeding against the applicants or at least one in the nature of an action between adverse parties.

83 particularly at 91, 73 S.Ct. 534, 97 L. Ed. 842 (1953).

Affirmed.

BAZELON, Chief Judge (concurring).

Were we writing on a clean slate, I would hold—for the reasons given in Judge Washington's dissenting opinion in Borrow v. Federal Communications Comm'n, 109 U.S.App.D.C. 224, 228, 285 F.2d 666, 670, cert. denied, 364 U.S. 892, 81 S.Ct. 223, 5 L.Ed.2d 188 (1960)—that the Federal Communications Commission has not been authorized to inquire into the political beliefs or affiliations of license applicants. But the court's decision there is controlling on that issue. Given the Commission's power so to inquire, the applicant's reason for refusing to respond becomes irrelevant. I therefore concur.