DEKLE, Justice.
This cause is before us on petition for writ of certiorari to review the Florida Public Service Commission’s Order No. 9242, dated December 4, 1970, and Order No. 9280, dated December 31, 1970. Wé have jurisdiction pursuant to Fla.Const. art. V, § 4(2), F.S.A.
On March 27, 1970, McKenzie Tank Lines, Inc., filed an application with the Commission seeking to extend its certificate to authorize it to transport petroleum, petroleum products and petroleum byproducts in bulk, in tank vehicles, over irregular routes, to, from and between all points and places in Florida.
Public hearings were held on the application before a hearing examiner. The application was opposed by Redwing Carriers, Inc., Fleet Transport Co., Inc., Petroleum Carrier Corp., and Motor Fuel Carriers, Inc. On December 4, 1970, the Commission entered its order in which the application of McKenzie was granted. Petitions for reconsideration filed by these protestants wefe denied on December 31, 1970, and they now seek review in this Court.
Petitioners contend that the Commission departed from the essential requirements of law by prohibiting protestants below from presenting testimony of-public witnesses to prove that the existing service was satisfactory. We find this contention to be without merit. Fla.Stat. § 323.03(3) (c), F.S.A. provides that a certificate shall be granted (when an application is made by a carrier for a certificate to operate in a territory already served by a certificate holder) only when the existing *518 certificate holders fail to provide those services and facilities which may reasonably be required by the Commission.[1] Therefore, the question presented by the stahite is “How much dissatisfaction is there with the existing service and facilities?” The number of satisfied customers has little probative value in establishing the failure of the existing certificate holders to provide service and facilities as required by the Commission. In other words, if the service to sufficient customers is inadequate, all the satisfied customers in the world can’t transform the inadequate service into adequate service. Somebody would still be getting inadequate service, and if such inadequate service falls below the reasonable requirements of the Commission, then the requirements of § 323.03(3) (c) are satisfied. In any event, here the Commission agreed to accept and to consider as fact that there were satisfied customers who would so testify.
Petitioners strenuously argue that this section of the statute (§ 323.03(3) (c)) is “jurisdictional”; that as a predicate for proceeding with a hearing, it must be shown that the service of present certificate holders is inadequate. We do not deem it jurisdictional in this sense, i. e., as a prerequisite to vesting authority to hear the matter. The requirements of § 323.-03(3) (c) only constitute a portion of the “essential requirements of law” which must be met in order for the Commission’s action to survive judicial review. Thus, the requirements of this statute are not jurisdictional, i. e., do not control the Commission’s power to hear the case, but rather constitute an essential portion of the necessary findings and evidence.
Finally, it is the opinion of this Court that the Order of the. Public Service Commission was based on competent substantial evidence. The following portions of the Commission’s Order demonstrate this:
“The record has been summarized above and is further discussed below in connection with determination of the questions herein: (1) whether public convenience and necessity requires and will be served by institution of the proposed transportation service; and (2) whether the additional service may be authorized, if required by the public, without impairing transportation facilities as a whole.
“This Commission is well aware of the tremendous population growth in our state during the past two decades. Florida’s population has moved from 2,771,000 in 1950 to over 6.5 million in 1970, placing it near the nation’s top in growth. Applicant introduced statistical evidence showing gasoline consumption increased from 1964 to 1970 as follows: July, 1964 (177,027,632 gallons) to July, 1970 (256,273,029 gallons), a 44.7% increase and January, 1964 (224,279,861 gallons) to January, 1970 (314,350,143 gallons), a 40.1% increase. Most of the state’s population growth has been in peninsular Florida where in most areas only two petroleum carriers are authorized. In South Florida for the transportation of asphalt only one, Redwing, has authority. In northwest Florida three carriers, McKenzie, Motor Fuel and PCC have operated successfully for more than 20 years. This Commission has been increasingly mindful of the disparity of available service in peninsular Florida with complaints and requests for emergency service more frequently emanating from those areas during the past several winter seasons. The numerous complaints registered by the supporting witnesses in this proceeding indicate continuing substantial dissatisfaction with the existing service. Five additional companies testified concerning unsatisfactory service from Hillsborough Coun *519 ty in a similar application by Motor Fuel Carriers and each stated it would utilize McKenzie if McKenzie’s application is granted.
“Recurring difficulties, particularly during the winter season, have occurred for the past two years. One of the only two south Florida carriers, Redwing, experienced a lengthy strike two years ago necessitating emergency authorizations to supply fuels to vital installations such as hospitals and generating stations.
“It is the responsibility of this Commission to assure adequate and sufficient transportation facilities to meet present and reasonably anticipated future public need. The efforts of the existing carriers have been insufficient to keep pace with the growth of Florida.
“We have considered protestants’ contention that a substantial percentage of their overall service is satisfactory. However, the numerous loads hauled under “incentive plan” and “dedicated unit” arrangements with large shippers must be discounted. This transportation is more akin to contract carriage and appears to us to have usurped the protestants’ common carrier obligation to serve all segments of the public equally. As to call and demand service normally expected from common carriers the percentage of unsatisfactory performance is much higher than any percentage of total loads transported. National Petroleum testified it received satisfactory service only 85% of the time. Tropic Oil of Sarasota stated Fleet was late in one out of every five deliveries (20% unsatisfactory). With further unrefuted testimony before us by Mercury Oil that it was advised last December 2 Fleet had 300 loads ahead of its orders and testimony by National Petroleum that it could not get service during the winter after making arrangements back in September, it is our opinion an additional carrier and new competition is very much needed.

“There are no indications that grant of the authority sought herein would have any material adverse effect upon protestants. . . . ”
[emphasis ours]
Accordingly, the petition for certiorari is certiorari.
Denied.
ROBERTS, C. J., and ERVIN, BOYD and McCAIN, JJ., concur.

. Greyhound Corp. v. Carter, 124 So.2d 9 (Fla.1960).