277 So.2d 9 (1973)
BLOCKER'S TRANSFER & STORAGE COMPANY et al., Petitioners,
v.
Jess YARBOROUGH et al., Respondents.
No. 42472.
Supreme Court of Florida.
April 4, 1973.
Rehearing Denied May 23, 1973.
*10 W.B. Dickenson, Jr., of Hill, Hill & Dickenson, Tampa, for petitioners.
Sol H. Proctor, of Proctor & Cain, Jacksonville, Prentice Pruitt, and L. Keith Pafford, Tallahassee, for respondents.
ADKINS, Justice.
We have for review by petition for writ of certiorari, an order of the Florida Public Service Commission which, on rehearing, reversed an earlier order of the Commission and granted a state-wide certificate to move household goods to J-W Moving and Storage, Inc.
Petitioners, Blocker's Transfer & Storage Company and fourteen other moving companies, protested the application, with four of the companies appearing to testify before the examiner. J-W Moving and Storage, Inc., a Largo-based agent for North American Van Lines, had held a certificate for moves in Pinellas and Pasco counties for over two years when it applied to extend its authority. For those persons seeking to leave the Pinellas-Pasco area, J-W had established an interlining arrangement with an exchange serviced by three North American agents with state-wide authority. All three are situated on the east coast of Florida and supported J-W's application so as to round out their state-wide coverage with a west coast affiliate.
The president of J-W testified that the interlining arrangement was unsatisfactory as he had lost some moves and had been forced to delay others because of the lack of availability of equipment from the exchange. An official of the exchange testified that he felt the Largo area was in need of another state-wide authority because some families chose to wait a day or two to deal with North American rather than dealing with another area firm. There was no evidence of any delay or other inconvenience of customers who dealt with the existing state-wide moving firms. An area realtor who testified for J-W as to the tremendous growth in the Largo area admitted that he had heard of no complaints about the moving service in the area.
Blocker's and the other protestants testified that they were able to handle all the moves in the area of a state-wide nature, and that the granting of another state-wide authority would cut into their operations and force them to raise rates. J-W's president testified that the granting of the application would not, in his opinion, injure other area moving companies as he would merely be moving with his own equipment those families which had been interlined in the past. However, no evidence was offered to support his claim.
Based on the evidence, in Order No. 9919, the Commission denied the application and found, in part:
"Of the protestants noted above, Terminal Van Lines, Stewart Bonded, Blocker's Transfer and Bekins Moving presented evidence generally related to their authority, equipment, facilities and operations. All of them are domiciled in the Pinellas County area and thus contend that the grant of the additional statewide authority permitting an additional carrier to provide direct service in and out of Pinellas County would further dilute their business and adversely affect them.
"In substance, the applicant contends that interlining shipments is unsatisfactory and then presents supporting evidence that a different type of interlining arrangement is desired. This is inconsistent and where an applicant seeking a territorial extension makes an issue of interlining, it should present evidence that interlining is unfeasible, impossible and unsatisfactory.
"From the foregoing, the Commission finds that the applicant has not shown that public convenience and necessity require the grant of the application; and that the grant of the authority will adversely *11 affect the transportation facilities and transportation as a whole in the territory involved."
In Order No. 10099, the order which Blocker's wants reviewed, the Commission reversed its position and granted the application, making the following conclusions:
"1. That, while Order No. 9919 indicates that fifteen carriers opposed the above application, eleven of these so-called protestants made no appearance at the hearing and offered no evidence in opposition;
"2. That the applicant clearly established that the area involved is experiencing a tremendous population growth;
"3. That even though the area involved is experiencing a large population growth, there have not been any additional household goods carriers certificated in the area for over fifteen years;
"4. That existing carriers will not be adversely affected by the grant of the application since the applicant will merely be transporting in its own equipment what it previously interlined with the Florida Carriers Exchange, an organization of North American agents to which none of the protestants belong; and
"5. That the present arrangement whereby the applicant has to interline with other carriers causes delays in service which adversely affects the shipping public."
Based upon these findings, the Commission held that public convenience and necessity required the granting of the application of J-W.
The role of this Court in reviewing orders of the Commission is to determine whether or not the order is illegal, or was reached without observing law or procedure, or violates organic or fundamental rights, or is merely arbitrary. Florida Motor Lines Corporation v. Douglass, 150 Fla. 1, 7 So.2d 843 (1942). There is a great presumption of correctness attendant to the orders of the Commission (Florida East Coast Railway Company v. King, 158 So.2d 523 (Fla. 1963)), and the burden falls on the petitioner to prove the incorrectness of the order. Fogarty Bros. Transfer, Inc. v. Boyd, 109 So.2d 883 (Fla. 1959). It is not the duty of this Court to reevaluate the probative weight to be given to the evidence, but merely to determine whether or not the findings of fact reached by the Commission are supported by competent, substantial evidence. Ace Delivery Service, Inc. v. Boyd, 111 So.2d 448 (Fla. 1959).
The duty of the Commission in considering applications for certificates is set forth in Fla. Stat. § 323.03(3)(a), F.S.A., which provides:
"At the time specified in said notice, or at such time as may be fixed by the commission, a public hearing upon said application shall be held by the commission. At or after such hearing the commission may issue a certificate of public convenience and necessity, as prayed for or refuse to issue the same, or may issue the same with modifications, or upon such terms and conditions as in its judgment the public convenience and necessity may require; provided, that the commission in granting any such certificate shall take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by said applicant, and also the effect upon transportation as a whole within said territory."
Fla. Stat. § 323.03(3)(c), F.S.A., is also applicable as there are certificate holders with state-wide authority domiciled in the Largo area. It provides:
"When application is made by a motor carrier for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to *12 provide service and facilities which may reasonably be required by the commission."
As we said in Redwing Carriers, Inc. v. Mayo, 255 So.2d 516 (Fla. 1971),
"... the question presented by the statute is `How much dissatisfaction is there with the existing service and facilities?'" (p. 518)
Despite the finding by the Commission that the present interlining arrangement causes delays in service which adversely affect the shipping public, there was no finding that the companies presently holding state-wide authority "fail to provide service and facilities which may reasonably be required by the commission," as required by Fla. Stat. § 323.03(3)(c), F.S.A. The only evidence of delay or inconvenience involved customers of J-W. There was not even a scintilla of evidence that any members of the moving public had faced a delay or other inconvenience in dealing with those companies which presently hold state-wide certificates in the Largo area.
The fact that J-W is not able to provide competitive state-wide service on an area-wide authority cannot be equated with a showing that the existing holders of state-wide authority are failing to provide required services or facilities.
The grant of the certificate sought by J-W might benefit that company and the interlining exchange, but as this Court said in Central Truck Lines v. Railroad Commission, 118 Fla. 555, 160 So. 26 (1935),
"The purpose of issuing certificates of public convenience and necessity is not for the advantage and benefit of the applicants requesting them, but is primarily for the public convenience and general welfare which are paramount to other problems... . The policy of the law is to avoid duplication of investments and maintenance and operating expenses and avoid inordinate commercial traffic on the highways that will tend to congestion and danger to traffic in general. Where a new carrier seeks to enter despite the fact that another is in the field, it is therefore generally held to be necessary for it to show that the existing service is not adequate to serve the public need." (p. 30)
While we have established that the word necessity does not mean an "absolute and indispensable necessity," but rather that which is "reasonably necessary to meet the public needs" (Greyhound Corp., S.E. Greyhound Lines Div. v. Carter, 124 So.2d 9 (Fla. 1960)), that does not mean that the requirement of showing a public need, required by statute, can be ignored. We are reluctant to overturn an order of the Commission as they are the finders of fact. We do not reverse solely because we would have reached a different result. Benton Bros. Film Exp. v. Florida Railroad & P.U. Com'n, 57 So.2d 435 (Fla. 1952). However, we will not affirm an order of the Commission if it is established that it departs from the essential requirements of law. Tamiami Trail Tours v. Carter, 80 So.2d 322 (Fla. 1955).
A finding of public necessity where there is no evidence to support a legally-required finding of inadequacy of existing services does not comport with the essential requirements of law, and where an essential finding is based solely on unreliable evidence or no evidence at all, the order should be held insufficient. Florida Rate Conf. v. Florida Railroad & P.U. Com'n, 108 So.2d 601 (Fla. 1959).
Accordingly, the writ of certiorari is issued, Order No. 10099 of the Florida Public Service Commission is quashed and the cause remanded for further proceedings not inconsistent with this opinion.
It is so ordered.
ROBERTS, Acting C.J., and BOYD, McCAIN and DEKLE, JJ., concur.
ERVIN and DREW (Retired), JJ., dissent.