314 So.2d 129 (1975)
FARGO VAN & STORAGE, INC., et al., Petitioners,
v.
William H. BEVIS et al., Respondents.
No. 45835.
Supreme Court of Florida.
April 23, 1975.
Rehearing Denied July 8, 1975.
*130 Bernard C. Pestcoe of Pestcoe & Payton, Miami, for petitioners.
Prentice P. Pruitt and Jerry M. Johns, Tallahassee, for respondents.
Richard B. Austin of the Law Offices of Richard B. Austin, Miami, for Gomez Moving Co., intervening respondent.
ORLANDO, Circuit Judge:
This cause comes before us on Petition for Writ of Certiorari to the Florida Public Service Commission (hereafter referred to as the P.S.C.) seeking to review its order # 11485 dated June 10, 1974, issued on re-consideration in re: application of Jose Prieto and Laureano Suarez, d/b/a Gomez Moving Company (hereafter referred to as the Applicant) for a certificate authorizing transportation of household goods between points in Dade and Broward County, Florida.
The Petition is presented pursuant to Article V, Section 3 of the Florida Constitution; *131 Section 350.641 of the Florida Statutes and Rule 4.1 of the Florida Appellate Rules.
The Applicant, whose previous certificate was limited to transportation within a portion of Dade County, Florida, filed its application with the Commission in August, 1972, seeking authority to act as a common motor carrier transporting household goods between all points in Dade and Broward Counties, with motor vehicle equipment domiciled in Miami, Dade County, Florida. This application was opposed by twenty-seven (27) protesting carriers having authority to transport household goods within some or all of the territory sought by the Applicant.
A two-day public hearing before an Examiner was held in September, 1972; and on re-consideration before another Examiner, an additional three-day public hearing was held in October and November of 1973, at Miami, Florida.
Subsequent to the first hearing on November 3, 1972, the Hearing Examiner filed his report, in which he recommended that the application be granted. Exceptions to the Examiner's report were subsequently filed by the protestants, oral arguments were held before the P.S.C.; and on May 1, 1973, the Commission issued its Order # 10670 granting the application.
On May 16, 1973, the protestants filed a Petition for re-hearing and re-consideration of this Order. The Commission, on July 11, 1973, granted the Petition for re-hearing and re-consideration. The Commission thereafter issued an Order canceling the previously-issued certificate of public convenience and necessity, which it had granted by its Order # 10670. In October and November of 1973, additional public hearings were held pursuant to the Commission's Order granting re-hearing and re-consideration.
In December, 1973, the Hearing Examiner filed his report, in which he recommended that the application be denied. The Commission, on June 10, 1974, entered its Order #11485 reversing the Hearing Examiner and granting the application.
It is this Order which brings this matter before the Court pursuant to the Petition for Writ of Certiorari.
At the original hearing in 1972, the Applicant produced six public witnesses. The general testimony of these witnesses was to the effect that the Applicant provided a service to the Latin community in the Miami area, which was in the process of spreading of the Broward County area, and that this "unique" service was not available from other carriers due to their inability to deal with the Spanish-speaking public in the Dade and Broward County areas. Four of the witnesses who testified had no need for services at the time of their testimony, and this testimony can only be considered as that of past-satisfied customers of the Applicant. One of these witnesses testified concerning a future move to Broward County and that the Applicant's services would be used. The sixth witness, who was the operator of a local cartage service in Miami, testified that he received frequent inquiries for household goods movers. Many of these inquiries came from English-speaking people, who were referred to other carriers, and those from the Spanish-speaking community were referred to the Applicant. He gave no testimony concerning the inadequacy of the service provided by the protestants, nor as to their ability to service Spanish-speaking customers.
The record indicates that the protestants had in their employ Spanish-speaking personnel, and in their advertising, made notice of that fact for the benefit of the Spanish-speaking public in the communities to be served.
The original Examiner's findings of fact and conclusions which recommended that the application be granted made the following finding of fact  "the Spanish-speaking *132 community is spreading from the Miami area into Broward County, and the requested authority is to enable the Applicant to continue service to these people". This finding is the main basis for the recommendation of approval of the application. However, no evidence of such "spreading" appears in the record, and further, the testimony of the public witnesses produced by the Applicant failed to establish that the protestants were providing an inadequate service to the Spanish-speaking community in the Dade and Broward County areas.
The testimony presented by the protestants indicated that the Applicant was in violation of several of the Commission's rules and regulations with reference to the authority which it held to transport goods within Dade County; these violations dealing with unlawful transportation beyond its authority and the failure to provide health certificates for several of the Applicant's drivers.
The additional witnesses presented by the protestants indicated that they held authority to transport household goods within Dade and Broward Counties, that they employed a number of drivers and other employees who speak Spanish and that they advertise "Si Habla Espanol" in the yellow pages of the telephone directory. The Applicant presented no testimony by any witness questioning the service capabilities of any of the protestants nor as to the inadequacy of authorized service within the Dade and Broward County areas.
Subsequent to granting a Petition for re-consideration and re-hearing, the Commission scheduled further hearings. At the continued hearings in October and November of 1973, the Applicant presented no testimony. These three days of hearings consisted of the protestants and public witnesses testifying pertaining to the Applicant's unlawful operations, protestant's operation and the effect of a grant of authority in this proceeding on the protestant's carriers. At these subsequent hearings, the Applicant invoked the 5th Amendment privilege against self-incrimination when called as an adverse witness for the protestants. The protestants argue that the invoking of the 5th Amendment and the refusal to answer questions concerning the Applicant's operation goes to the very right of the protestants to have meaningful due process of law without a deprivation of its property rights, to-wit: its certificates of public convenience and necessity.
The role of the Court in reviewing Orders of the Commission is to determine whether or not the Order is illegal or was reached without observing law or procedure, or violates organic or fundamental rights or is merely arbitrary. See Blocker's Transfer & Storage Company v. Yarborough, 277 So.2d 9 (1973), and Florida Motor Lines Corp. v. Douglas, 150 Fla. 1, 7 So.2d 843 (1942).
There is a presumption of correctness attendant to the Orders of the Commission, and the burden falls on the Petitioner in this cause to prove the incorrectness of the Order. See Fogerty Bros. Transfer, Inc. v. Boyd, 109 So.2d 883 (Fla., 1959). It is not the duty of this Court to re-evaluate the probative weight to be given to the evidence but merely to determine whether or not the findings of fact reached by the Commission are supported by competent substantial evidence. See Blocker's Transfer & Storage v. Yarborough, Supra.
Florida Statute 323.03(3)(a), FSA, sets forth the duties of the Commission in considering applicants for certificates as follows:
"At the time specified in said notice, or at such time as may be fixed by the commission, a public hearing upon said application shall be held by the commission. At or after such hearing the commission may issue a certificate of public convenience and necessity, as prayed for or refuse to issue the same, or may issue *133 the same with modifications, or upon such terms and conditions as in its judgment the public convenience and necessity may require; provided, that the commission in granting any such certificate shall take into consideration the effect that the granting of such certificate may have upon transportation facilities within the territory sought to be served by said applicant, and also the effect upon transportation as a whole within said territory."
Florida Statute 323.03(3)(c), FSA, is also applicable in this cause, since there are certificate holders domiciled in the Miami area who are authorized to serve the Broward County area. The Statute provides as follows:
"When application is made by a motor carrier for a certificate to operate as a common carrier in a territory or on a line already served by a certificate holder, the commission shall grant same only when the existing certificate holder or holders serving such territory fail to provide service and facilities which may reasonably be required by the commission." (Emphasis supplied)
This Statute places a burden on applicants to show that existing service and facilities are unsatisfactory and that the public convenience and necessity requires the granting of additional service. See Redwing Carriers, Inc. v. Mayo, 255 So.2d 516 (Fla., 1971).
Despite the findings by the Commission that the grant of the requested authority will have minimal effect on the protestants, and further, a finding that the applicant serves a segment of the community which has limited or no ability to communicate in English, and that this Spanish-speaking community is spreading from the Miami area into Broward County, the record would not support a finding that the protestants failed to provide service and facilities which may reasonably be required by the Commission, as required by Florida Statute Section 323.03(3)(c), FSA.
The fact that the Applicant speaks Spanish and advertises in Spanish cannot be equated with a showing that the existing holders of authority to provide service in this two-county area are failing to provide required service or facilities. In fact, in this time of the vastly increasing population, the attendant traffic in the geographic area concerned in this cause and the fuel crisis in which we now find ourselves, the Commission should require a much greater showing of need for additional motor vehicle transportation authority than appears in the record of this cause.
It is well settled in the law that in granting the application sought in this case, a finding of public convenience and necessity must be supported by competent and substantial evidence. See Stewart Bonded Warehouse, Inc., v. Bevis, 294 So.2d 315 (1974).
When the application involves an area already served, the applicant must prove that his proposed service is necessary, as well as desirable for the public, that existing service is inadequate and that the granting of a new certificate would not adversely affect existing carriers. See Allen Bonded Warehouse, Inc., v. Mayo, 247 So.2d 51 (Fla., 1971). In this case, the applicant proved only his capability to deal with the Spanish-speaking community, but there was no showing that his proposed service was necessary, as well as desirable for the public. Further, the record indicates that existing service is adequate and that the granting of a new certificate would adversely affect existing carriers.
The Commission cannot base a finding of public convenience and necessity solely upon the ability of an applicant to deal with a foreign-speaking segment of a community, especially, when the record reflects that the existing carriers are also able to deal with the segment of the public involved.
In view of the foregoing, we need not reach the further substantial question of *134 the Applicant's failure to answer questions concerning the application by invoking the 5th Amendment privilege against self-incrimination. However, we refer the Commission to the Opinion of the United States Court of Appeals, District of Columbia, in Blumenthal v. F.C.C., 115 U.S. App.D.C. 305, 318 F.2d 276 (1963).
Accordingly, the Writ of Certiorari is issued; Order #11485 dated June 10, 1974, of the Florida Public Service Commission is quashed, and the case is remanded for further proceedings not inconsistent with this Opinion.
It is so ordered.
ADKINS, C.J., and ROBERTS and McCAIN, JJ., concur.
ENGLAND, J., concurs with opinion.
ENGLAND, Justice (concurring).
I concur in the result reached by the majority. I also agree that the scope of our review is limited to a determination of whether the Commission's findings of fact are supported by competent substantial evidence. See chapter 74-310, Laws of Florida § 120.68(10) (1974).