Carlos CAMPOS, Ismael Rodriguez, Rosa Romero, Ruben Tapia, Javier Navarro, Individually and on behalf of all others similarly situated, Plaintiffs,

v.

FEDERAL COMMUNICATIONS COMMISSION; Richard E. Wiley, Chairman, Federal Communications Commission; E. J. Galins, Engineer In Charge, Chicago Regional Field Operations Bureau, Federal Communications Commission; North Central Airlines, Inc., Defendants.

No. 77 C 4205.

United States District Court, N. D. Illinois, E. D.

Feb. 6, 1980.

Arnold S. Rosenberg, 18th Street Neighborhood Legal Services, Linda Yanez, Legal Services Center for Immigrants, Robert Masur, Employment Law Project, Chicago, Ill., for plaintiffs.

Thomas P. Sullivan, U. S. Atty., Chicago, Ill., John P. Greenspan, U. S. Atty., F. C. C., Washington, D. C., for defendants.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge.

The named plaintiffs in this action are aliens who have been admitted into the

United States for permanent residence. All of these plaintiffs have sought employment in the private sector which, by Federal Communication Commission (FCC) regulation, requires them to obtain various commercial radio operator licenses.[1] The plaintiffs sought to secure such licenses. The defendants, however, informed the plaintiffs that they were ineligible for commercial operator licenses under the terms of the Federal Communication Act, 47 U.S.C. § 303(*l*) which, with two exceptions not relevant to this case, prohibit the FCC from issuing commercial operators' licenses to aliens.[2]

The plaintiffs have filed this suit on behalf of themselves and others similarly situated challenging the constitutionality of section 303(*l*) and the defendants' actions thereunder. They assert that the across-the-board denial of operators' licenses to aliens violates the due process guarantee of the fifth amendment because it creates a suspect classification—alienage—which deprives plaintiffs' of their liberty interest in pursuing the private employment options of their choice. The defendants counter that the prohibition is constitutional as a rational exercise of the federal government's power to regulate immigration and naturalization and safeguard the national security. The case is now before the Court on the parties' cross-motions for summary judgment.

Before addressing the merits of these contentions, it is appropriate for the Court to ascertain whether it possesses jurisdiction of this case. This question is especially pertinent in a case involving the communications laws, since Congress has set forth a specific scheme for federal court jurisdiction of cases arising under the Communications Act. Upon a careful examination of that scheme, the Court concludes that it lacks jurisdiction to entertain this action.

■■■ Section 155(d)(7) of the Act requires that a party seeking judicial review of an FCC order first exhaust available administrative remedial procedures. This requirement, however, is inapplicable where recourse to administrative review procedures would be futile. *Secret v. Brierton*, 584 F.2d 823, 827 (7th Cir. 1978). Defendants maintain that the FCC under no circumstances could have waived applicability of section 303(*l*) and granted plaintiffs the licenses they sought.[3] Since the plaintiffs

---

1. Plaintiff Carlos Campos worked as a station agent for North Central Airlines, Inc., during 1976 and 1977. In the course of his job he was required to use a radio transmitter licensed to Aeronautical Radio, Inc. Under 47 C.F.R. § 87.133(a), any person operating a radio station in the Aviation Services is required to have an operator's license. Because Campos was unable to obtain such a license, he was discharged from his job in April, 1977.

Plaintiffs Rosa Romero and Ismael Rodriguez obtained training in the maintenance and repair of radio transmitters in pursuit of employment with commercial broadcasting stations. Under 47 C.F.R. §§ 13.61(d), 13.62(c)(1), such maintenance and repair may be done only by a person with a particular grade of operator's license. As a result, plaintiffs Romero and Rodriguez have been precluded from obtaining the jobs for which they were trained.

Plaintiff Ruben Tapia obtained training in the field of radio and television transmitter repair and seeks employment as a repairman or as a radio broadcaster. The above listed provisions have precluded Tapia from obtaining a license to do repairs, thus preventing him from obtaining employment in that field. In addition, since many radio stations require broadcasters to operate radio transmitters, Tapia's inability to procure a license allegedly has diminished his possibilities for obtaining a position as a broadcaster as well.

Finally, plaintiff Javier Navarro has sought employment as a radio broadcaster. His inability to obtain a license, as was the case with Tapia, allegedly has made it very difficult for him to find employment in his chosen field.

2. 47 U.S.C. § 303(*l*)(1) provides in relevant part that the FCC shall have the authority

to prescribe the qualifications of station operators, to classify them according to the duties to be performed, to fix the forms of such licenses, and to issue them to such *citizens or nationals* of the United States . . . as the Commission finds qualified . . . (emphasis supplied)

Pursuant to this statutory provision, the FCC has promulgated a regulation which limits issuance of operator's licenses to United States citizens and nationals. 47 C.F.R. § 13.5(a).

3. *See* Memorandum of Points and Authorities in Support of Federal Defendants' Motion for Judgment on the Pleadings or in the Alternative, for Summary Judgment at 3 n. 5.

could not have obtained relief by recourse to the administrative process, the fact that some of the plaintiffs may have failed to exhaust that process poses no bar to judicial review.

■ Even given the availability of judicial review of the license denials, there remains the critical question of which court is empowered to hear the plaintiffs' claims. Section 402(a) of the Act states:

Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in [28 U.S.C. § 2342(1)].

Under section 2342(1),

The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—

(1) all final orders of the Federal Communications Commission . . .

Subsection (b) of section 402 provides that final orders by the FCC which pertain to the licensing process are within the exclusive review jurisdiction of the United States Court of Appeals for the District of Columbia. *See Cook v. United States*, 394 F.2d 84, 86 (7th Cir. 1968).

Taken together, these provisions indicate that any attempt to set aside or determine the validity of a final order issued under the Act involving the licensing process must be brought to the District of Columbia Court of Appeals. In this case, it is clear that the plaintiffs seek to have an FCC action declared invalid, and that the action pertains to the licensing process under the Act. Thus, the pivotal determination is whether the denial of licenses to plaintiffs was a final order within the meaning of the Act.

■ There are a number of factors to be considered in determining the finality of an administrative order. One relevant consideration is whether the administrative process has reached a point at which it would not be disrupted by judicial review. *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970). Another factor is whether the order appealed from imposes an obligation or denies a right. *Illinois Citizens Committee for Broadcast v. F.C.C.*, 515 F.2d 397, 402 (D.C. Cir.1975). Finally, "in cases where the record is unchallenged, where the issues are legal and not factual, and where notice has been provided to the parties the court of appeals has held that it has jurisdiction despite the absence of an administrative hearing." *Writers Guild of America, West, Inc., v. F.C.C.*, 423 F.Supp. 1064, 1080 (C.D. Cal.1976).

The FCC action in this case fulfills all the requisites of a final order. It is clear that judicial review of the FCC action would not disrupt the administrative process; indeed, any recourse to that process by the plaintiffs would be futile. The agency action denied plaintiffs a right which they believe they possess. Moreover, as the parties acknowledge by the fact that they filed cross-motions for summary judgment, the dispute in this case revolves around legal, not factual, issues.[4]

Plaintiffs nonetheless argue that since their challenge involves only the constitutionality of a statutory provision of the Communications Act, and not the discretion of the agency, they are not appealing a "final order" within the intendment of section 402. The fact that the plaintiffs invoke the constitutional guarantee of due process, however, does not exempt this case from the procedures set forth in the Communications Act.[5] The grievance in this

---

4. Indeed, the absence of any factual issues in this case obviates the need for a district court's special function as a fact-finder.

5. The cases cited by the plaintiffs do not require a contrary result. In *Johnson v. Robison*, 415 U.S. 361, 367, 94 S.Ct. 1160, 1165, 39

L.Ed.2d 389 (1974), the Court was faced with the question of whether the Veteran's Readjustment Benefits Act of 1966, 38 U.S.C. § 211(a), prohibited entirely federal review of plaintiff's constitutional objections to certain actions of the Administrator of Veterans' Affairs. The Court found that it did not, and that

particular case arises out of the defendants' refusal to grant the licenses under the Act, and seeks to determine the validity of the refusal. This is the type of final order which the Act directs plaintiffs to challenge, if at all, in the District of Columbia Court of Appeals. *See Morrisseau v. Mount Mansfield Television, Inc.*, 380 F.Supp. 512, 515 (D.Vt.1974).

Accordingly, the Court is required to dismiss this action. It is so ordered.[6]

the district court had jurisdiction to consider the claim. The instant case, however, does not raise the question of whether federal review of plaintiffs' claim may be had at all; rather, it poses the more narrow issue of which federal court is the appropriate forum in which to pursue their claim.

*Writers Guild of America, West, Inc. v. F. C. C.*, 423 F.Supp. 1064, 1079–1080 (C.D.Cal. 1976), is also distinguishable. There, the plaintiffs filed suit in district court alleging that and other defendants conspired to create the "family hour" doctrine, which violated the plaintiffs' first amendment rights. In rejecting the contention that jurisdiction of the suit properly lay in the court of appeals, the court noted that the actions which formed the basis of plaintiffs' action had none of the indicia of a final order as required by 47 U.S.C. § 402. In this case, as the Court notes above, the action which forms the basis of the plaintiffs' claim fulfills the elements of finality set forth by the court in *Writers Guild.*

In addition, the Court observes that the unconstitutionality alleged by plaintiffs stems from regulations promulgated and enforced by the FCC as well as from the statutory provision. Were it not for the requirements imposed by the agency, *see* note 1, *supra*, the prohibition against issuing licenses to aliens would not have affected these named plaintiffs in their pursuit of their chosen fields of private employment. This makes it even more evident that the plaintiffs herein are seeking to declare invalid an "order of the Commission under this chapter" as required by section 402(a).

6. This decision merely directs plaintiffs to a different court where the serious questions they have raised can be properly adjudicated. The court expresses no view as to the merits.