Carlos CAMPOS, Ismael Rodriguez, Javier Navarro, individually and on behalf of all others similarly situated, Plaintiffs-Appellants,

v.

FEDERAL COMMUNICATIONS COMMISSION, et al., Defendants-Appellees.

Nos. 80–1466, 80–1937.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 13, 1981.

Decided June 3, 1981.

Charles A. Linn, Legal Assistance Foundation of Chicago, Chicago, Ill., for plaintiffs-appellants.

John P. Greenspan, F. C. C., Washington, D. C., for defendants-appellees.

Before CUMMINGS and BAUER, Circuit Judges, and SPEARS, Senior District Judge.*

CUMMINGS, Circuit Judge.

Section 303(*l*) of the Communications Act of 1934 (Act) as amended (47 U.S.C. § 303(*l*)),[1] prohibits the Federal Communications Commission (Commission) from granting commercial radio operator licenses to aliens. Aliens are therefore barred from obtaining jobs in the telecommunications and other industries for which operator licenses are required by the Commission or industry practice. Plaintiffs in No. 80–1466 and petitioners in No. 80–1937 in these consolidated cases are lawful permanent resident aliens each of whom sought to secure a radio operator license at the Commission's Field Office in Chicago, Illinois, and was not permitted to take the qualifying examination because of his alien status. They claim that Section 303(*l*) deprives them of their right to equal protection as guaranteed by the Due Process Clause of the Fifth Amendment.

No. 80–1466 is a class action brought by five named plaintiffs in the district court for the Northern District of Illinois on behalf of all lawfully admitted permanent resident aliens in Illinois who had applied or attempted to apply, or who will apply or attempt to apply for commercial radio operator licenses with the Commission. On February 6, 1980, the district court entered an order dismissing the suit for want of jurisdiction. 487 F.Supp. 865. Three of the named plaintiffs, Carlos Campos, Javier Navarro and Ismael Rodriguez, appeal from that order. Plaintiff Campos, a citizen of Ecuador, was admitted to permanent residence in this country in 1974; plaintiffs Navarro and Rodriguez, both citizens of Mexico, were admitted to permanent residence in 1974 and 1968 respectively. According to the complaint, Campos was discharged from his job as a baggage handler with North Central Airlines (now Republic Airlines) when he was unable to obtain a Restricted Radiotelephone Operator Permit because without such a license he is prohibited under Commission regulations from engaging in radio communications with landed aircraft during the unloading of passengers and baggage. 47 C.F.R. § 87.133. Campos was later rehired as a cleaner but wishes to work in his former job. Plaintiffs Navarro and Rodriguez each seek a Third-Class Radiotelephone Operator Permit in order to pursue careers as a radio broadcaster ("disc jockey") and a broadcast radio station engineer respectively.[2]

On April 16, 1980, after the notice of appeal was filed in case No. 80–1466, petitioners Campos and Navarro reapplied for licenses at the Commission's Chicago Field Office and were again informed of their ineligibility to take the qualifying examinations. After their requests for a hearing were denied, petitioners applied for review

---

* The Honorable Adrian A. Spears, Senior District Judge of the Western District of Texas, is sitting by designation.

1. Section 303(*l*) provides in pertinent part that the Commission shall have

   "authority to prescribe the qualifications of station operators, to classify them according to the duties to be performed, to fix the forms of such licenses, and to issue them to such citizens or nationals of the United States * * * as the Commission finds qualified, except that in issuing licenses for the operation of radio stations on aircraft the Commission may, if it finds that the public interest will be served thereby, waive the requirement of citizenship in the case of persons holding United States pilot certificates or in the case of persons holding foreign aircraft pilot certificates which are valid in the United States on the basis of reciprocal agreements entered into with foreign governments; * * *."

   Operator licenses may also be obtained by aliens who have been granted broadcast station licenses pursuant to Section 310 of the Act. 47 U.S.C. § 303(*l*)(2). Under Section 310 (47 U.S.C. § 310), aliens are barred from holding station licenses except in certain cases aboard aircraft and ships.

2. Broadcast station engineers are required by the Commission to be licensed. Broadcasters are not required by the Commission to be licensed. However, many smaller stations require their broadcasters to perform additional technical functions for which licensing is necessary, so that plaintiff Navarro alleges his career opportunities to be severely limited by his inability to obtain licensing.

by the full Commission in order to challenge the constitutionality of Section 303(*l*) and the Commission's actions pursuant thereto. On June 25, the Commission denied this application in a Memorandum and Order stating that it was bound by Section 303(*l*) and without authority to invalidate that provision. On July 9, 1980, petitioners filed with this Court a petition for review of the Commission's June 25 order pursuant to Section 402(a) of the Act (47 U.S.C. § 402(a)). The case was docketed here as No. 80–1937 and later consolidated with the appeal in No. 80–1466. We dismiss the appeal in No. 80–1466 and deny the relief sought in No. 80–1937.

## I

The Commission argues that the district court correctly dismissed the class action in No. 80–1466 and that this Court is without jurisdiction over the petition in No. 80–1937 because both actions involve final licensing decisions reviewable exclusively in the Court of Appeals for the District of Columbia Circuit. The Commission's position with respect to the petition for review is without merit.

Section 402 of the Act (47 U.S.C. § 402) sets forth two "mutually exclusive" avenues of judicial review of final Commission orders. *Rhode Island Television Corp. v. Federal Communications Commission*, 320 F.2d 762, 766 (D.C. Cir. 1963). Section 402(b)[3] lists eight specific categories of orders that are reviewable only in the District of Columbia Circuit pursuant to Sections 402(b)–402(j) of the Act. Section 402(a)[4] is a residual clause providing that all orders not listed in Section 402(b) are reviewable pursuant to the Administrative Orders Review Act (28 U.S.C. § 2341 *et seq.*), which in turn provides for review in either the Court of Appeals for the District of Columbia Circuit or the Court of Appeals for the Circuit in which plaintiff resides or has his principal place of business. 28 U.S.C. § 2343. Orders reviewable under one subsection may not be reviewed under the other. *Federal Communications Commission v. Columbia Broadcasting System*, 311 U.S. 132, 61 S.Ct. 152, 85 L.Ed. 87; *Cook, Inc. v. United States*, 394 F.2d 84 (7th Cir. 1968).

The first seven categories listed in Section 402(b) cover orders relating to the granting, denial, modification and revocation of construction permits and station licenses. The last category covers orders suspending operator licenses. The petition here is for review of orders denying applications for operator licenses. Thus, as the Commission concedes, the order in issue "is not precisely described by any of the categories of appeals provided for in Section 402(b)" (Br. 17). The Commission argues

---

**3.** Section 402(b) provides:

"(b) Appeals may be taken from decisions and orders of the Commission to the United States Court of Appeals for the District of Columbia in any of the following cases:

(1) By any applicant for a construction permit or station license, whose application is denied by the Commission.

(2) By any applicant for the renewal or modification of any such instrument of authorization whose application is denied by the Commission.

(3) By any party to an application for authority to transfer, assign, or dispose of any such instrument of authorization, or any rights thereunder, whose application is denied by the Commission.

(4) By any applicant for the permit required by Section 325 of this Act whose application has been denied by the Commission, or by any permittee under said section whose permit has been revoked by the Commission.

(5) By the holder of any construction permit or station license which has been modified or revoked by the Commission.

(6) By any person who is aggrieved or whose interests are adversely affected by any order of the Commission granting or denying any application described in paragraphs (1), (2), (3) and (4) hereof.

(7) By any person upon whom an order to cease and desist has been served under Section 312 of this Act.

(8) By any radio operator whose license has been suspended by the Commission."

**4.** Section 402(a) provides:

"Any proceeding to enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except those appealable under subsection (b) of this section) shall be brought as provided by and in the manner prescribed in chapter 19A of Title 5."

The reference is to the Administrative Orders Review Act, codified at 28 U.S.C. § 2341 *et seq.*

that the order is nevertheless within the ambit of Section 402(b) because it is a licensing decision functionally similar to those specifically listed. However, it is well settled that Section 402(b) is to be narrowly construed and confined to the enumerated categories. *Federal Communications Commission v. Columbia Broadcasting System, supra.* Plainly, had Congress intended that all licensing decisions be reviewable pursuant to Section 402(b), there would have been no point in listing the eight specific categories provided for in that Section. The order is not one described in Section 402(b) and is therefore reviewable in this Court pursuant to Section 402(a). See also *Ilowite v. United States*, 390 F.2d 589 (3d Cir. 1968); *Blumenthal v. Federal Communications Commission*, 318 F.2d 276 (D.C. Cir. 1963), certiorari denied, 373 U.S. 951,[5] 83 S.Ct. 1679, 10 L.Ed.2d 706.

Because we have jurisdiction under Section 402(a) to reach the merits of the substantive issue raised in both cases now before us, the jurisdictional question in No. 80–1466—whether Section 402 bars a constitutional challenge to Section 303(*l*) in the district court—is a moot issue. Accordingly, we dismiss the appeal in No. 80–1466 without stating any view on that question.

## II

■ Turning to the merits, we reject petitioners' claim that Section 303(*l*) violates the Due Process Clause of the Fifth Amendment. The power of Congress "to prescribe the terms and conditions on which aliens may come into this country and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention," has long been recognized. *Kleindienst v. Mandel*, 408 U.S. 753, 766, 92 S.Ct. 2576, 2583, 33 L.Ed.2d 683, quoting *Lem Moon Sing v. United States*, 158 U.S. 538, 547, 15 S.Ct. 967, 970, 39 L.Ed. 1082. While this power is not without limit (*Hampton v. Mow Sun*

*Wong*, 426 U.S. 88, 101, 96 S.Ct. 1895, 1904, 48 L.Ed.2d 495), it is settled that where, as here, no substantive constitutional right is impaired, federal regulation of aliens must be upheld unless wholly irrational." *Mathews v. Diaz*, 426 U.S. 67, 83, 96 S.Ct. 1883, 1893, 48 L.Ed.2d 478.

■ Petitioners concede that judicial deference to Congressional regulation of aliens is appropriate with respect to provisions relating directly to the "admission, exclusion, deportation or naturalization of aliens" (Br. 51) and also with respect to provisions regulating aliens' participation in certain government functions and programs, but argue that provisions such as Section 303(*l*) which bar aliens from private employment are subject to "heightened" if not strict scrutiny. In support of this position they cite *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534, and other cases involving state discrimination against aliens. In *Graham*, the Supreme Court stated that classifications based on alienage are "inherently suspect and are therefore subject to strict judicial scrutiny whether or not a fundamental right is impaired." 403 U.S. at 376, 91 S.Ct. at 1854. Since *Graham*, the Court has applied a more "relaxed" scrutiny to state classifications intended to protect certain government functions. See *Ambach v. Norwick*, 441 U.S. 68, 72–75, 99 S.Ct. 1589, 1592–94, 60 L.Ed.2d 49. But the case law firmly establishes that where a state seeks to limit the private employment opportunities of aliens, it "must show that its purpose or interest is both constitutionally permissible and substantial, and that its use of the classification is 'necessary [to] the accomplishment' of its purpose or the safeguarding of its interest." *In re Griffiths*, 413 U.S. 717, 721–722, 93 S.Ct. 2851, 2854–55, 37 L.Ed.2d 910; see also *Examining Board v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65. Petitioners contend that this

---

**5.** In *Ilowite*, the Third Circuit reviewed an order involving an application for an operator permit without discussing jurisdiction, but jurisdiction was necessarily based on Section 402(a). In *Blumenthal*, the District of Columbia Circuit expressly stated that its review of an order involving an application for an operator license was pursuant to Section 402(a), not Section 402(b).

test is applicable to the federal government as well and that Section 303(*1*) cannot pass muster under this test.

It is true, of course, that equal justice is required by the Due Process Clause of the Fifth Amendment as well as by the Equal Protection Clause of the Fourteenth Amendment and that both amendments typically require the same level of judicial scrutiny. *Buckley v. Valeo,* 424 U.S. 1, 93, 96 S.Ct. 612, 670, 46 L.Ed.2d 659; *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884. Thus it is not illogical to conclude, as petitioners urge us to do, that what is "suspect" for Fourteenth Amendment purposes must also be suspect for Fifth Amendment purposes. Under this view, the protection afforded by the two amendments would still not be coextensive because there might be "overriding national interests which justify selective federal legislation that would be unacceptable for an individual State," *Hampton v. Mow Sun Wong, supra,* 426 U.S. at 100, 96 S.Ct. at 1903, but the analytic approach to reviewing federal and state regulations would be the same.

However, the different judicial treatment of federal regulation of aliens and state regulation of aliens is predicated not merely on the fact that immigration is an exclusively federal interest but also on the fact that the federal power is of a political nature necessarily subject to narrow judicial review. *Hampton v. Mow Sun Wong, supra,* 426 U.S. at 101, 96 S.Ct. at 1904; *Harisiades v. Shaughnessy,* 342 U.S. 580, 588–589, 72 S.Ct. 512, 518–19, 96 L.Ed. 586; *Fong Yue Ting v. United States,* 149 U.S. 698, 711–713, 13 S.Ct. 1016, 1021–22, 37 L.Ed. 905. We are persuaded therefore that alienage-based classifications are not under existing law suspect in any category of cases for Fifth Amendment purposes[6] and that "calling alienage a suspect classification [for Fourteenth Amendment purposes is] just another way of saying that

federal law implicitly requires the states, except in cases of special need, to accord resident aliens the same treatment as citizens." Rosberg, The Protection of Aliens from Discriminatory Treatment by the National Government, 1977 Sup.Ct.Rev. 275, 315. Consequently, petitioners' reliance on the state discrimination cases is misplaced.

In *Mow Sun Wong,* the Court assumed without deciding that "the national interest in providing an incentive for aliens to become naturalized, or possibly even as providing the President with an expendable token for treaty negotiating purposes" is sufficient to justify a citizenship requirement for federal civil service jobs. 426 U.S. at 105, 96 S.Ct. at 1906; see also *id.* at 116, 96 S.Ct. at 1911. Subsequently, this Court concluded that the interests assumed to be sufficient in *Mow Sun Wong* are sufficient and that the Supreme Court would so hold. *Vergara v. Hampton,* 581 F.2d 1281 (1978), certiorari denied, 441 U.S. 905, 99 S.Ct. 1993, 60 L.Ed.2d 373. See also *Mow Sun Wong v. Campbell,* 626 F.2d 739 (9th Cir. 1980); *Lopez v. Bergland,* 448 F.Supp. 1279 (N.D.Calif.1978); *Santin Ramos v. United States Civil Service Commission,* 430 F.Supp. 422 (D.P.R.1977). The Commission advances the same interests as justifications for Section 303(*1*). While this case involves a limitation on private rather than public employment, we cannot say that it is a "wholly irrational" means of serving the interests advanced.[7] Accordingly, we hold that Section 303(*1*) does not violate the Fifth Amendment and therefore deny the relief sought.

Appeal dismissed in No. 80–1466; the Commission's order of June 25, 1980, is affirmed in No. 80–1937.

---

**6.** See *Mathews v. Diaz, supra,* 426 U.S. at 80, 96 S.Ct. at 1891: "The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is 'invidious.' "

**7.** It should be noted that both petitioners are in fact eligible for citizenship. It should also be noted that Section 303(*1*) does contain exceptions based on reciprocal agreements with foreign nations. See note 1 *supra.*